## STEPHEN F. AUSTIN STATE UNIVERSITY, Petitioner,

### v.

### Diane FLYNN, Respondent.

### No. 04–0515.

Supreme Court of Texas.

Argued Oct. 19, 2006.

Decided June 29, 2007.

Greg Abbott, Attorney General of Texas, Rance L. Craft, Barry Ross McBee, Edward D. Burbach, Rafael Edward Cruz, John P. Giberson, Brenda E. Brockner, Office of the Attorney General of Texas, Austin, Kent Sullivan, Stinson Morrison Hecker LLP, Kansas City, MO, for Petioner.

Thomas Stefan Allen, Nacogdoches, for Respondent.

Justice MEDINA delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice O'NEILL, Justice BRISTER, Justice GREEN, and Justice JOHNSON joined, and in all but Part III of which Justice HECHT, Justice WAINWRIGHT, and Justice WILLETT joined.

This interlocutory appeal concerns a trial court's order denying Stephen F. Austin State University's (SFA) plea to the jurisdiction and motion to dismiss. The court of appeals affirmed the order, holding that the Texas Tort Claims Act waived SFA's sovereign immunity and that the recreational use statute did not apply. 202 S.W.3d 167. Because we conclude that the recreational use statute does apply to this suit and does operate under the undisputed facts to bar the plaintiff's claim here, we reverse the court of appeals' judgment and render judgment dismissing the case.

The Lanana Creek Trail is a community trail open to the public for walking and cycling. Part of the trail crosses SFA's campus, and the university has granted an easement to the City of Nacogdoches for this use. Diane Flynn was riding her bike on the trail, crossing the SFA campus, when she was hit by a stream of water from an oscillating sprinkler. The force of the water knocked her off her bike, causing her injury. The sprinkler was part of an in-ground irrigation system on SFA's campus, and this particular sprinkler head was on SFA's shot-put field about four feet from the trail.

Flynn sued SFA for damages under the Tort Claims Act, alleging that her injuries were proximately caused by SFA's negligent use of real property, negligent operation of the premises, negligent activity, and gross negligence. SFA filed a plea to the jurisdiction and motion to dismiss, arguing that sovereign immunity had not been waived under the Tort Claims Act,[1] or,

---

1. *See* TEX. CIV. PRAC. & REM.CODE §§ 101.021,    101.056.

alternatively, that it was entitled to protection under the recreational use statute[2] because it had granted the public permission to use its property for recreational purposes.

The trial court denied SFA's plea to the jurisdiction, and SFA perfected an interlocutory appeal. *See* TEX. CIV. PRAC. & REM.CODE § 51.014(a)(8). The court of appeals affirmed the trial court's order, concluding that Flynn had sufficiently alleged a premises defect for which the Tort Claims Act waived sovereign immunity and that neither the discretionary powers exception to the Act nor the recreational use statute barred Flynn's claim. 202 S.W.3d at 175–76. SFA appeals, arguing again that its decision to install an irrigation system was a discretionary function within the bounds of the discretionary powers exception to the Tort Claims Act or, alternatively, that the recreational use statute protects it from liability.

## II

■ Because this is an interlocutory appeal, we first consider the issue of our own jurisdiction. An interlocutory appeal is generally final in the court of appeals. TEX. GOV'T CODE § 22.225(b)(3). There are exceptions, however, such as when the court's decision conflicts with a prior decision of another court of appeals or of this Court. TEX. GOV'T CODE §§ 22.001(a)(2), 22.225(c). Two decisions conflict for purposes of establishing our jurisdiction when the two are so similar that the decision in one is necessarily conclusive of the decision in the other.[3]

SFA contends that we have jurisdiction because the court of appeals' decision here conflicts with *Guadalupe–Blanco River Authority v. Pitonyak*, 84 S.W.3d 326 (Tex.App.-Corpus Christi 2002, no pet.). In that case, the Corpus Christi Court of Appeals rejected the contention that a governmental unit might control the premises for purposes of waiving immunity under the Tort Claims Act and yet not sufficiently control the premises for purposes of the recreational use statute. *See id.* at 339–40.

The case concerned two men who drowned while boating in a bayou. Their survivors sued the state river authority whose jurisdiction included the bayou. The authority filed a plea to the jurisdiction which the trial court denied. *Id.* at 326. The court of appeals reversed, holding that the recreational use statute applied to protect the authority from liability even though the survivors pleaded a premises defect claim sufficient to support a waiver of immunity under the Tort Claims Act. *Id.* at 339–40, 345. The survivors argued that the recreational use statute did not apply because the bayou was a navigable waterway owned by the State, not the authority, and ultimately under the State's control. The court of appeals rejected as inconsistent the argument that the authority could be the relevant premises owner for purposes of the Tort Claims Act but not for purposes of the recreational use statute. *Id.* at 340.

In this case, the court of appeals has taken a position similar to the argument rejected in *Guadalupe–Blanco River Authority*. The court here recognizes SFA as the owner of the defective premises for

---

**2.** *See* TEX. CIV. PRAC. & REM.CODE §§ 75.001–.004.

**3.** In 2003, the Legislature broadened this Court's jurisdiction over interlocutory appeals by redefining conflicting decisions to include an "inconsistency in their respective decisions that should be clarified to remove unnecessary uncertainty in the law and unfairness to litigants." TEX. GOV'T CODE § 22.225(e). This case was filed before the effective date of that legislation and thus our former definition applies. *See, e.g., Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 223 (Tex.2004).

purposes of waiver under the Tort Claims Act, but redefines the premises for purposes of the recreational use statute. 202 S.W.3d at 175. This conflict is sufficient to invoke our jurisdiction. *See Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 689 (Tex.2003) (concluding that one court need not expressly disavow the other court's decision for conflicts jurisdiction to exist). We turn then to the merits of this appeal.

## III

The Tort Claims Act generally waives the state's immunity from suit for certain tort claims involving automobiles, premises defects, or the condition or use of property. See Tex. Civ. Prac. & Rem.Code §§ 101.001(3)(A)-(B), 101.021, 101.022, 101.025; *County of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex.2002). Even under these circumstances, however, the Act preserves immunity for discretionary decisions under the "discretionary powers" exception to the waiver. Tex. Civ. Prac. & Rem.Code § 101.056. The exception's purpose is to avoid judicial review or interference with those policy decisions committed to the other branches of government. *State v. Terrell*, 588 S.W.2d 784, 787 (Tex.1979). The provision generally preserves immunity not only for the state's public policy decisions, but also for the state's failure to act, when no particular action is required by law. *See* Tex. Civ. Prac. & Rem.Code § 101.056; *see also State v. San Miguel*, 2 S.W.3d 249, 250–51 (Tex.1999).

When the government in the exercise of its discretion decides to act, however, a distinction is drawn between the negligent formulation of policy, for which sovereign immunity is preserved, and the negligent implementation of policy, for which immunity is waived. *See Terrell*, 588 S.W.2d at 788; *see also City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex.1995). This determination is a question of law. *State v. Rodriguez*, 985 S.W.2d 83, 85 (Tex.1999).

The court of appeals concluded that SFA's decision to irrigate its campus was a policy decision for which immunity was preserved, but that Flynn's complaint about SFA's operation of the irrigation system over the trail during peak periods of public use was the negligent implementation of that policy. 202 S.W.3d at 176. SFA argues, however, that it retained immunity because the design of its irrigation system, including the placement of sprinkler heads, the force of the water, and the pattern of the spray were all discretionary decisions, involving the design of a public work. SFA equates its irrigation system to the design of a public highway and its safety features, which have been construed to be policy formulation rather than implementation. *See State of Texas v. Miguel*, 2 S.W.3d 249, 251 (Tex.1999).

We have more than one test "for determining when questioned conduct involves a protected 'discretionary' determination." 19 William V. Dorsaneo III, Texas Litigation Guide § 293.12[7] (2007). One such test distinguishes between policy-level decisions and operational-level decisions. *See, e.g., Terrell*, 588 S.W.2d at 788. Under this test, one court has observed that the decision to release water from a spillway constitutes policy formulation for which the water district is immune, but that the subordinate decision of determining the volume of the outflow is policy implementation for which the district is not immune. *Bennett v. Tarrant County Water Control & Improvement Dist. No. 1*, 894 S.W.2d 441, 452 (Tex.App.-Fort Worth 1995, writ denied). Another test distinguishes the design of public works, for which there is immunity, from their maintenance, for which there is not immunity. *See, e.g., County of Cameron*, 80 S.W.3d at 558. Thus, while the government is not

liable for designing a bridge without lighting, it may be liable for failing to maintain the lighting on a bridge designed to be illuminated. *Compare Tarrant County Water Control v. Crossland,* 781 S.W.2d 427, 433 (Tex.App.-Fort Worth 1989, writ denied), *with County of Cameron,* 80 S.W.3d at 558.

■ The court of appeals correctly concluded that the decisions here concerning when and where the water was to spray were operational- or maintenance-level decisions, rather than policy formulation. 202 S.W.3d at 176. Thus, the acts that allegedly caused Flynn's injury fall outside the scope of the discretionary powers exception.

## IV

### A

■ SFA also argues that Flynn's present claim is barred by the recreational use statute. *See* TEX. CIV. PRAC. & REM.CODE §§ 75.001–.004. The recreational use statute recognizes that landowners or occupiers, who open their property to the public for recreational purposes, provide a public benefit. To encourage this use, the statute limits the liability of the "owner, lessee, or occupant of real property" who "gives permission to another to enter the premises for recreation." *Id.* § 75.002(c). By dedicating this easement for use as a recreational trail, SFA argues, it gave the public, including Flynn, permission to use a part of its campus for recreation and is therefore entitled to the statute's protection.

The court of appeals disagreed, however, concluding that by granting the City of Nacogdoches an easement through its campus, SFA forfeited its control over those who might use the trail for recreational purposes and thereby gave up the statute's protection. 202 S.W.3d at 175. The court reasoned that: (1) by granting an easement over its campus, SFA ceased

to be a member of the class protected by the recreational use statute; i.e., ceased to be an owner or occupier of the land in question; and (2) Flynn did not need SFA's permission to use the trail because SFA did not own or control the land at the time of her use. *Id.* at 174–75. We disagree with both of these reasons.

■ First, we disagree that the easement removed SFA from the protection of the recreational use statute. An easement does not convey title to property. *Marcus Cable Assocs. v. Krohn,* 90 S.W.3d 697, 700 (Tex.2002). It is instead a "nonpossessory interest that authorizes its holder to use the property for only particular purposes." *Id.* (citing RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 1.2 cmt. d). Thus, even though SFA dedicated a public easement over its campus for use as a recreational trail, it retained ownership of the underlying fee, and, as the owner of the property, SFA retained its status as a member of the class protected by the recreational use statute.

■ We also disagree that Flynn's use of the recreational trail was without SFA's permission or that SFA's permission was unnecessary. Although the recreational use statute provides that an owner of real property is entitled to the statute's protection when it gives "permission to another to enter for recreation," the statute does not specify how that permission is to be granted. TEX. CIV. PRAC. & REM.CODE § 75.002(c). Nor does the statute require that the landowner contemporaneously acknowledge each use. Permission may instead be implied from a landowner's knowledge of, and acquiescence in, the public's use of its land for recreational purposes. *See, e.g., Gulf, C. & S.F. Ry. Co. v. Matthews,* 99 Tex. 160, 88 S.W. 192, 197 (1905) (a trespass tolerated for a sufficient period of time that the public believes it has the permission to use the property).

■ It would be perverse to hold the formal dedication in this case insufficient, particularly since recreation was the reason for the dedication of the easement in the first place. Indeed, to construe the statute so narrowly as to exclude SFA under these circumstances would be contrary to the statute's purpose of encouraging landowners to open their land for recreational use by limiting their liability. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex.2006). Accordingly, we hold that a landowner who dedicates a public easement for recreational purposes is entitled to the protection of the recreational use statute. *See Urban v. Grasser*, 243 Wis.2d 673, 627 N.W.2d 511 (2001) (applying Wisconsin's recreational use statute to protect landowners who grant easements for recreational purposes).

**B**

The statute protects the landowner by providing that one who permits the use of its land for recreation does not assure that the premises are safe for recreational purposes and does not assume responsibility for the actions of those admitted to the property. TEX. CIV. PRAC. & REM.CODE § 75.002(c)(1), (3). The statute further protects the landowner from liability associated with the recreational use of real property by elevating the plaintiff's burden of proof. *Id.* § 75.002(c)(2), (d). The statute effectively requires for liability either gross negligence or an intent to injure. *See id.* § 75.002(d) ("owner, lessee, or occupant" must be "grossly negligent" or "act[ ] with malicious intent or in bad faith"); *see also Shumake*, 199 S.W.3d at 286–87.

Here, Flynn generally alleges gross negligence. In her brief to this Court, Flynn asserts "that SFA knew that the use of the sprinkler in the manner and at the time of said use posed a risk of serious injury to others, including the Plaintiff, but that SFA was grossly negligent in ignoring and

creating that risk." Flynn's response to SFA's plea to the jurisdiction and motion to dismiss provides no additional facts to support her claim of gross negligence. SFA asserted in its plea and motion that Flynn's allegations of gross negligence were conclusory and a sham, attaching the deposition testimony of both Flynn and her husband.

■ Flynn's husband, Matthew, was also riding his bike on the day of the accident. When biking with his wife, he ordinarily rode ahead, periodically turning back to check on her progress. He therefore was the first to encounter the sprinkler on SFA's property.

Matthew noticed the sprinkler oscillating in a clockwise direction as he approached SFA's shot-put field. He estimated that the sprinkler to be about four feet off the trail, arcing a stream of water approximately 15 to 20 feet into the air. Approaching the sprinkler, he ducked under the water arc and continued on his ride. He apparently did not view the sprinkler to be a sufficient threat either to stop or to go back to warn his wife.

As Flynn approached the shot-put field her husband was already out of sight. She also noticed the sprinkler and its water arc about nine or ten seconds ahead near the trail. It was her habit to focus attention on the trail about two or three feet ahead of her bike, however, and she did not again notice the sprinkler until she was almost upon it. She tried to veer away, but it was too late, and the water knocked her to the ground.

In *Shumake*, we held that the recreational use statute does not foreclose premises defect claims, but rather limits the landowner's liability by raising the plaintiff's burden of proof to that of gross negligence, malicious intent, or bad faith. *Shumake*, 199 S.W.3d at 285–87. We further emphasized that the statute's liability limitations should have meaning. Thus,

we observed that landowners have no duty to warn or protect recreational users from defects or conditions that are open and obvious. *Id.* at 288. Moreover, we observed that gross negligence is not synonymous with negligence, but rather requires the existence of an extreme risk of serious injury or death, evaluated both objectively and subjectively. *Id.* at 287.

The Legislature has defined gross negligence as an act or omission: (1) "which when viewed objectively from the standpoint of the actor at the time of its occurrence, involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and" (2) "of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." TEX. CIV. PRAC. & REM.CODE § 41.001(11). The allegations in this case fail to demonstrate either that the sprinkler presented an extreme risk, that SFA was aware of the risk, or that SFA was consciously indifferent to the sprinkler's capacity to inflict serious injury. Moreover, Flynn concedes that she was aware of the sprinkler before she encountered it, and as we have already mentioned, the recreational use statute does not obligate a landowner to warn of known conditions. *See* TEX. CIV. PRAC. & REM.CODE § 75.002(c)(2) (classifying recreational user as trespasser); *cf. State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 237 (Tex.1992) (noting that for premises liability even licensee must prove no actual knowledge of the condition). Accordingly, we agree with SFA that Flynn's conclusory allegations of gross negligence are not sufficient to meet the standard imposed by the recreational use statute or to rebut the evidence attached to SFA's motion to dismiss.

In *Miranda,* we recognized similar deficiencies to be more than mere defects in pleading because they involve the state's sovereign immunity. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 227–28 (Tex.2004). We further noted that because the recreational use statute modifies the Tort Claims Act's waiver of sovereign immunity, it is properly part of the government's plea to the jurisdiction and thus part of the interlocutory appeal. *Id.* at 224–25; *see also* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (granting governmental unit right to interlocutory appeal from denial of a plea to the jurisdiction). Here, the court of appeals erred in rejecting SFA's plea under the recreational use statute because no material factual dispute exists regarding its application in this case. Because the statute applies and operates under the undisputed facts to bar Flynn's claim, we reverse the court of appeals' judgment and render judgment dismissing the case.

Justice HECHT filed a concurring opinion, in which Justice WAINWRIGHT and Justice WILLETT joined.

Justice HECHT, joined by Justice WAINWRIGHT and Justice WILLETT, concurring.

Having decided that Stephen F. Austin State University is immune from Diana Flynn's lawsuit because it was not grossly negligent in irrigating its campus the way it did, which is a prerequisite for liability under the Recreational Use Statute,[1] the Court need not consider whether the University was also immune from suit because its conduct fell within the discretionary function exception to the Texas Tort Claims Act's waiver of immunity.[2] The Court nevertheless volunteers that the exception does not apply because "when and

---

**1.** TEX. CIV. PRAC. & REM.CODE §§ 75.001–.004.

**2.** *Id.* § 101.056 ("[The Tort Claims Act] does not apply to a claim based on: (1) the failure

where the water was to spray, were operational- or maintenance-level decisions, rather than policy formulation."[3] But suppose the University, for some reason, had made when and where water was to spray a policy matter, and grounds workers had faithfully carried out that policy. The Court's analysis would then except the University's actions from the Act's waiver of immunity because it had exercised its discretion, as a policy matter, to water the way it did. If the government is immune from liability for all policy decisions, it could minimize its liability by making everything policy. The government would

be encouraged to make policy on every silly subject imaginable, and the Act's discretionary function exception would swallow most of the waiver. As difficult as it has been "to meaningfully construe and consistently apply" the Act,[4] I would not make matters worse.

The discretionary function exception, like other exceptions in the Act, was taken from the Federal Tort Claims Act.[5] This Court has referred to the exception several times but has never had occasion to analyze it carefully.[6] Texas courts should be guided by the United States Supreme

---

of a governmental unit to perform an act that the unit is not required by law to perform; or (2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.").

**3.** *Ante* at 658.

**4.** *Texas Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 591 (Tex.2001) (Hecht, J., concurring).

**5.** *Driskill v. State*, 787 S.W.2d 369, 370 (Tex. 1990) ("The exceptions to the waiver of sovereign immunity contained in the Texas Tort Claims Act are patterned after those contained in the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (1982 & Supp.1989). Tex. House Interim Comm. to Study Doctrine of Sovereign Immunity, Report to the 61st Leg., 7 (1969)....."). *Compare* 28 U.S.C. § 2680 ("The provisions of [the Federal Tort Claims Act] shall not apply to—(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused"), *with* Act of May 14, 1969, 61st Leg., R.S., ch. 292, § 14, 1969 Tex. Gen. Laws 874, 877–878 (codified as Tex.Rev.Civ. Stat. Ann art. 6252–19, § 14), *repealed and recodified by* Act of May 17, 1985, 69th Leg., R.S., ch. 959, sec.

9(1), 1985 Tex. Gen. Laws 3242, 3322 ("The provisions of [the Texas Tort Claims Act] shall not apply to: ... (7) Any claim based upon the failure of a unit of government to perform any act which said unit of government is not required by law to perform. If the law leaves the performance or nonperformance of an act to the discretion of the unit of government, its decision not to do the act, or its failure to make a decision thereon, shall not form the basis for a claim under this Act....").

**6.** *See, e.g., State ex rel. State Dep't of Highways and Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 326 (Tex.2002) ("Section 101.056 excepts claims based on the State's discretionary policy decisions. For instance, the Act does not waive immunity for decisions about highway design or what types of safety features to install, because these decisions involve the exercise of discretion." (citation omitted)); *County of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex.2002) ("But the Act does not waive immunity for discretionary decisions, such as whether and what type of safety features to provide."); *Texas Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002) (per curiam) ("However, the median's slope and the lack of safety features, such as barriers or guardrails, reflect discretionary decisions for which TxDOT retains immunity under the Act's discretionary-function exception."); *Texas Dep't of Transp. v. Garza*, 70 S.W.3d 802, 806 (Tex.2002) ("In other words, the State remains immune from suits arising from its discretionary acts and omissions."); *State v. Miguel*, 2 S.W.3d 249, 250–251 (Tex. 1999) (per curiam) ("Under section 101.056,

Court's thorough, repeated analysis of the discretionary function exception to the federal statute,[7] but that analysis has been entirely ignored. In this case, the federal exception would not cover the University's actions, but not because they were taken at an operational or maintenance level. The Supreme Court has construed the discretionary function exception to the federal waiver of immunity to cover only "decisions grounded in social, economic, and

political policy"[8] I would apply the exception in the Texas Act the same way. Even if the University had made watering the campus a policy issue, the policy would not be one protected by the exception. I concur in the Court's opinion except as to Part III.

---

the State retains its immunity for claims based on its 'decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.' Whether a governmental activity is discretionary is a question of law. The State preserves its immunity for formulating policy because it is a discretionary act. Decisions about highway design and about what type of safety features to install are discretionary policy decisions. A court should not second-guess a governmental unit's decision about the type of marker or safety device that is the most appropriate." (citations omitted)); *State v. Rodriguez,* 985 S.W.2d 83, 85 (Tex.1999) (per curiam) ("First, under section 101.056, the State preserves its immunity for an act 'if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.' Thus, if the State's action is discretionary, it does not waive its immunity. An act is discretionary if it requires exercising judgment and the law does not mandate performing the act with such precision that nothing is left to discretion or judgment. *See City of Lancaster v. Chambers,* 883 S.W.2d 650, 654 (Tex.1994) [a case dealing with official immunity]. Design of any public work, such as a roadway, is a discretionary function involving many policy decisions, and the governmental entity responsible may not be sued for such decisions." (citations omitted)); *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 754 (Tex.1995) ("In *State v. Terrell,* this Court elaborated on a distinction necessary to analyze governmental liability for policy decisions. 588 S.W.2d 784 (Tex.1979). Discussing both the police protection and the discretionary powers exemptions to the Tort Claims Act, the Court distinguished between the negligent *formulation* of policy, for which

sovereign immunity is preserved, and the negligent *implementation* of policy, for which immunity is waived...."); *Harris County v. Dillard,* 883 S.W.2d 166, 170 (Tex.1994) (Spector, J., dissenting) ("Prior case law, however, suggests that training and supervision may be discretionary duties for which the County cannot be held liable."); *State v. Hynes,* 865 S.W.2d 943, 944 (Tex.1993) (per curiam) ("Discretionary acts by the State are not subject to liability."); *State v. Terrell,* 588 S.W.2d 784, 787 (Tex.1979) ("Section 14(7) excludes liability for all claims based on a government's failure to perform an act when the law leaves performance of the act to the *discretion* of the government. Section 14(7) appears to be broad enough to encompass the exclusion for failure to provide police or fire protection. As we understand the two provisions, the purpose of both is the same: to avoid a judicial review that would question the wisdom of a government's exercise of its discretion in making policy decisions. The interests to be served by these provisions are several—e.g., effective, unfettered performance of officials in making policy decisions and the maintenance of the separation of powers between the executive, legislative, and judicial branches of government.").

7. *See, e.g., United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); *United States v. Varig Airlines,* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984); *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

8. *Gaubert,* 499 U.S. at 323, 111 S.Ct. 1267; *see also id.* at 335, 111 S.Ct. 1267 (Scalia, J., concurring).