# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00011-CV

**Texas Department of Transportation, Appellant**

**v.**

**Larry Hathorn, Individually and as Representative of the Estate of Debra Picha, Appellee**

### FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
### NO. C-1-PB-08-088294, HONORABLE NIKKI DESHAZO, JUDGE PRESIDING[1]

## M E M O R A N D U M   O P I N I O N

The Texas Department of Transportation (TxDOT) brings this accelerated appeal from an order denying a motion for summary judgment in which TxDOT asserted its sovereign immunity from suit. Because we conclude that the premise-defect and special-defect liability theories alleged by Hathorn implicate discretionary decisions regarding highway design for which TxDOT retains sovereign immunity, we reverse the probate court's order denying summary judgment and render judgment in favor of TxDOT.

## BACKGROUND

Larry Hathorn, Individually and as Representative of the Estate of Debra Picha, intervened in a product liability, wrongful death and survival suit filed by the families of

---

[1] Judge Nikki DeShazo presided as the visiting judge.

Susan Blount and Patricia Metheny after a tragic accident on Highway 71 in Austin in which Blount, Metheny, and Picha were killed.[2] During a heavy rainstorm, Blount lost control of her Nissan Murano SUV. The SUV hydroplaned and struck the rear of a parked dump truck. Hathorn and the Blount and Metheny families (collectively "Claimants") attributed the collision in part to an excessive accumulation of water on the roadway.

Claimants initially sued a number of Nissan entities and Osuna Trucking, Inc. Claimants subsequently amended their pleadings to bring negligence claims against Capital Excavation Company (Capital), Malone-Wheeler, Inc., R.A. Miller, P.E., and Asphalt Paving Company of Austin, Inc. The amended pleadings also asserted premise-defect claims against TxDOT. Claimants' fifth amended petition—the live pleading against all the construction defendants, the trucking company, and TxDOT at the time of the summary-judgment hearing—alleged that TxDOT retained Capital before the collision to perform a "notch-and-widen" project on Highway 71 in which older asphalt and new asphalt were joined and that "the design and/or construction adversely altered water drainage." They further alleged that numerous accidents occurred at the same location and that TxDOT subsequently eliminated the roadway defect through pavement "milling," "leveling-up," and the application of porous friction course (PFC) asphalt, a "special asphalt that dramatically reduces wet weather hydroplane accidents." As to TxDOT, which would have sovereign immunity for its discretionary highway design decisions, *see Texas Dep't of*

---

[2] The plaintiffs in the suit were Larry Blount, Individually, and as Representative of the Estate of Susan Blount, Deceased; Garrett Blount; Rachel Blount; Mary Jo Bolfing; John R. Matheny, Individually, and as Representative of the Estate of Patricia Matheny, Deceased; Molly Matheny; Collin Matheny; Arthur Pianta; and Florence Pianta.

*Transp. v. Ramirez*, 74 S.W.3d 864, 865 (Tex. 2002) (per curiam), Claimants alleged that their suit falls within an exception to immunity because the highway project "resulted in a special defect or alternatively, a premise defect on the surface of Highway 71 allowing for excessive accumulation of water."

The summary-judgment evidence shows that TxDOT's notch-and-widen project involved the addition of a left-turn lane and paved shoulders on Highway 71 at Bee Creek Road, along with the addition of a left-turn lane to access a private subdivision. The project initially had two designers—with TxDOT designing the portion west of the location where the accident made the basis of this suit occurred and Malone-Wheeler designing the other portion for the developer of the subdivision—but TxDOT subsequently incorporated both designs into the project's overall construction plans. TxDOT engineer Benjamin P. Ramirez was responsible for overseeing and verifying TxDOT's design and for reviewing, commenting, and incorporating Malone-Wheeler's design into the overall design of the job.

One aspect of the project's design involved the construction of the roadway's "cross slope," an angle designed into a roadway and expressed in percentages, that allows for drainage and provides comfort to motorists while driving through roadway curves. Plans for this notch-and-widen project identified specific cross-slope values to be built into the road at certain points. The plans also acknowledged that the cross slope of the existing roadway varied. A question arose before paving about whether to use the cross-slope values set forth in the plans or to match the cross slope of the new pavement to the existing roadway.

3

TxDOT inspector Kenneth Brewer called Ramirez to report Capital's finding, based on a spot check of a few locations on the roadway, that the cross-slope percentages at some locations did not match the cross-slope values indicated in the plans for those locations.[3] Ramirez responded by telling Brewer to instruct Capital to build the road's cross slopes in accordance with the plans. Ramirez testified that, when giving that instruction, he expected that the cross slopes would be built within the plan's tolerances. Capital's field engineer, David Womack, testified that Ramirez's instruction did not give him any concern, that he recalled other TxDOT widening projects in which roads were built with different cross slopes from the existing pavement, and that he did not believe following the cross slope in the plans would create a hazard or danger on the roadway.

In response to Hathorn's lawsuit arising from the accident, TxDOT filed traditional and no-evidence motions for summary judgment, contending that it retained sovereign immunity because Hathorn's suit implicated TxDOT's discretionary decisions about roadway design.[4] *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.056 (West 2011) (discretionary-function exception); Tex. R. Civ. P. 166(a), (b), (i). Hathorn responded that his suit against TxDOT did not "exclusively contend" that the design of the roadway was the proximate cause of his injuries but also sought to impose liability on TxDOT for "construction defects—acts taken in the implementation of previously

---

[3] The cross-slope measurements taken almost two years after the subject collision—and after the alleged roadway defect was "eliminated"—showed variations in the cross slope on Highway 71. However, nothing in this record quantifies the percentage difference in the cross slope that Capital noted at the site for the spot-checked locations. Not all of the spot-checked locations showed variations in the cross slope.

[4] The Blount and Metheny families settled their claims against all defendants. Hathorn settled with Asphalt Paving, R.A. Miller, Malone-Wheeler, and TxDOT engineer Benjamin P. Ramirez. TxDOT and Capital are the only defendants remaining in Hathorn's suit, and only TxDOT is a party to this appeal.

made policy choices," constituting either special or premise defects under the limited waiver of immunity in the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.001-.109 (West 2011 & Supp. 2011). The probate court heard and denied TxDOT's summary judgment. TxDOT now appeals that order.[5]

## ANALYSIS

**Sovereign immunity and the Texas Tort Claims Act**

This appeal turns on whether TxDOT retains sovereign immunity for the acts and/or conditions of which Hathorn complains. The State of Texas generally retains sovereign immunity from suit and can be sued only if the Legislature waives immunity in clear and unambiguous language. *University of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 115 (Tex. 2010) (per curiam) (citing Tex. Gov't Code Ann. § 311.034 (West Supp. 2011); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004)). Sovereign immunity, i.e., the State's immunity from suit and liability, applies in certain instances to the State and its subdivisions, including TxDOT. *See Rolling Plains Groundwater Conservation Dist. v. City of Aspermont*, 353 S.W.3d 756, 759 n.4 (Tex. 2011); *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(A) (defining "governmental unit").

---

[5] An order denying a motion for summary judgment is usually not appealable. *Baker Hughes, Inc., v. Keco R.&D., Inc.*, 12 S.W.3d 1, 5 (Tex. 1999). However, because TxDOT's motion for summary judgment challenged the probate court's jurisdiction based on an assertion of sovereign immunity, we have jurisdiction to review the order denying that motion. *See Thomas v. Long*, 207 S.W.3d 334, 338 (Tex. 2006) (recognizing that "Legislature provided for an interlocutory appeal when a trial court denies a governmental unit's challenge to subject matter jurisdiction, irrespective of the procedural vehicle used"); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2011).

The law is clear that TxDOT retains sovereign immunity for discretionary acts of roadway design. *Ramirez*, 74 S.W.3d at 866-67; *State v. Miguel*, 2 S.W.3d 249, 251 (Tex. 1999); *State v. Rodriguez*, 985 S.W.2d 83, 85 (Tex. 1999); *see Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 657 (Tex. 2007) (noting that sovereign immunity is not waived for claim based on governmental unit's discretionary decision). Section 101.056 of the civil practice and remedies code codifies the retention of immunity for a claim based on:

(1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or

(2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

Tex. Civ. Prac. & Rem. Code Ann. § 101.056 (providing discretionary-function exception). The Texas Supreme Court defines an act as discretionary "if it requires exercising judgment and the law does not mandate performing the act with such precision that nothing is left to discretion or judgment." *Rodriguez*, 985 S.W.2d at 85. Whether a governmental act is discretionary is a question of law. *Miguel*, 2 S.W.3d at 251.

Accordingly, to the extent that Hathorn's claims against TxDOT implicate solely discretionary acts of roadway design, TxDOT is entitled to immunity. Hathorn asserts that his claims do not solely implicate discretionary acts of roadway design, but rather that his claims fall within the limited waiver of sovereign immunity set forth in the Texas Tort Claims Act for claims arising from premise defects or special defects. *See Hayes*, 327 S.W.3d at 115-16 (citing Tex. Civ. Prac. & Rem.

6

Code Ann. § 101.022(a), (b)).  If the condition at issue is a premise defect or a special defect, it is specifically governed by section 101.022 of the Tort Claims Act.  *Miranda*, 133 S.W.3d at 233; *State v. Tennison*, 509 S.W.2d 560, 562 (Tex. 1974).  Texas law has drawn a distinction between premise defects or special defects and conditions resulting directly from discretionary design decisions, and claimants may not use creative pleading to recast an act of discretionary roadway design as a premise defect or special defect claim under section 101.022.  *See Ramirez*, 74 S.W.3d at 866-67 (rejecting pleading that highway's slope and lack of barriers were premise defects and holding that median's slope and lack of barriers reflected discretionary decisions); *Rodriguez*, 985 S.W.2d at 85 (rejecting pleading of detour as special defect and holding that detour's location and design resulted from State engineer office's discretionary judgment); *see also Texas Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 392 (Tex. 2011) (noting that creative pleading cannot be used to effect waiver of sovereign immunity).

**TxDOT's motion for summary judgment**

In its sole issue, TxDOT contends that it was entitled to summary judgment because Hathorn's claims arose from TxDOT's discretionary roadway design decisions, the claims did not fall within the Texas Tort Claims Act's limited waiver of sovereign immunity for premise and special defects, and thus, the probate court lacked jurisdiction over Hathorn's claims.  Hathorn counters that the probate court correctly denied summary judgment because "the claims against TxDOT are based upon non-design defects that made the roadway unreasonably dangerous."  Even so, Hathorn acknowledges that "if the defect is created solely by an improper design, then the defect is a result of a discretionary act and the [S]tate retains immunity from suit."

Usually, when a party moves for traditional and no-evidence summary judgment, we first review the trial court's judgment under the no-evidence standard. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see also* Tex. R. Civ. P. 166(a)(i). In this case, we address the probate court's ruling on the traditional summary judgment first because it is dispositive. *See Poag v. Flories*, 317 S.W.3d 820, 825 (Tex. App.—Fort Worth 2010, pet. denied); *see also* Tex. R. App. P. 47.1 (requiring "written opinion that is as brief as practicable," addressing all issues that are raised and necessary to final disposition).

We review the trial court's ruling on a summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). We consider the summary-judgment evidence in the light most favorable to the nonmovant, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Id*.; *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002).

When a governmental unit raises the affirmative defense of sovereign immunity in a traditional summary-judgment motion, it must establish the affirmative defense as a matter of law. *See* Tex. R. Civ. P. 166a(c); *see Thompson v. City of Corsicana Hous. Auth.*, 57 S.W.3d 547, 552 (Tex. App.—Waco 2001, no pet.). Once the movant conclusively establishes its entitlement to an affirmative defense of statutory immunity, the burden of production shifts to the nonmovant to present evidence sufficient to create a fact issue on at least one element of either the movant's affirmative defense or an exception to that affirmative defense. *See Zeifman v. Nowlin*, 322 S.W.3d

8

804, 808 (Tex. App.—Austin 2010, no pet.); *Palmer v. Enserch Corp.*, 728 S.W.2d 431, 435 (Tex. App.—Austin 1987, writ ref'd n.r.e.) (citing *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936 (Tex. 1973)). Summary judgment is proper when a suit is barred as a matter of law because of a governmental unit's immunity. *Shives v. State*, 743 S.W.2d 714, 715 (Tex. App.—El Paso 1987, writ denied) ("A motion for summary judgment may be based on a showing that the cause of action is barred as a matter of law by the affirmative defense of governmental immunity."); *see Garza v. Cruz*, No. 04-04-00339, 2005 Tex. App. LEXIS 1758, at *8-9 (Tex. App.—San Antonio Mar. 9, 2005, no pet.) (mem. op.) (reversing denial of summary judgment and rendering judgment in favor of Texas Department of Public Safety because its evidence conclusively established that it retained sovereign immunity from claimants' suit and response failed to raise issue of material fact).

TxDOT thus bore the burden on its traditional motion for summary judgment to establish as a matter of law that Hathorn's claims were barred by sovereign immunity, in this instance because the claims were based on TxDOT's discretionary decisions about the design of the roadway. In support of its motion, TxDOT drew heavily from the testimony and reports of Hathorn's experts and the supreme court's precedent in *Ramirez*. The entirety of TxDOT's summary-judgment evidence before the probate court was uncontroverted.

**Hathorn's response**

Hathorn's response argued that, while TxDOT retains sovereign immunity for acts of policy formulation, it waives immunity for negligent policy implementation. *See Flynn*, 228 S.W.3d at 657. Whether a governmental unit's complained-of action involves policy "formulation" or

9

"implementation" is a question of law. *Id.* (citing *Rodriguez*, 985 S.W.2d at 85). Hathorn asserts that there is "ample summary judgment evidence that defects were created by improper implementation of the design of the roadway." However, his response to TxDOT's motion for traditional summary judgment provided only legal argument to the effect that his theories sound in negligent implementation, but do not present additional summary-judgment evidence. *See Madeksho v. Abraham, Watkins, Nichols & Friend*, 57 S.W.3d 448, 455 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (noting that "conclusory argument" in response to motion for summary judgment is not summary-judgment evidence). Hathorn's response consists entirely of argument and offers no different view of the summary-judgment evidence derived from his own experts.

His response further argues that his claims against TxDOT "sound in its implementation of policy" in the actual construction of the highway and that his pleadings demonstrate his attempt to recover "for the negligence manifest in the construction defects that made the roadway unreasonably dangerous." *But see Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995) (concluding that pleadings, unlike these, that are sworn or verified are usually not summary-judgment evidence); *Zeifman*, 322 S.W.3d at 804 (claimant could not rely on his pleadings to assert that he met his burden of producing evidence to create fact issue on defendant's entitlement to statutory immunity). Even if Hathorn's pleadings were summary-judgment evidence, Hathorn's petition never refers to negligent implementation of any policy; he pleads only special-defect and premise-defect theories against TxDOT, which are immaterial if the conditions of which he complains implicate the discretionary-function exception. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.056; *Ramirez*, 74 S.W.3d at 867 (rejecting premise-defect claim that

10

was based on discretionary decisions about highway median's slope and lack of barriers); *Perez v. City of Dallas*, 180 S.W.3d 906, 911 (Tex. App.—Dallas 2005, no pet.) (noting that discretionary decision regarding design of trash disposal pit located on municipal premises could not provide basis for waiver of sovereign immunity).

Although Hathorn did not refer to any summary-judgment evidence supporting a negligent-implementation theory of liability against TxDOT, summary judgments must stand on their own merits, and Hathorn's deficient response does not supply by default the summary-judgment proof necessary to establish TxDOT's right. *See City of Houston v. Clear Creek Basin Auth*., 589 S.W.2d 671, 678 (Tex. 1979). As such, we proceed to determine whether TxDOT conclusively established its sovereign immunity from Hathorn's suit as a matter of law under the discretionary-function exception. *See id.* at 679; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.056.

### *Flynn*'s discretionary-determination standards

Although Hathorn's response denies that TxDOT's conduct implicates a discretionary function, he does admit that at least some aspect of his suit against TxDOT necessarily presents a roadway-design complaint, arguing that he "do[es] not *exclusively* contend that the design of the roadway is the proximate cause of [his] injuries."

Since its ruling on the discretionary-function exception in *Ramirez*, the supreme court in *Flynn* recognized at least two tests for deciding whether the governmental unit's complained-of action "involves a protected 'discretionary' determination." *Flynn*, 228 S.W.3d at 657. The first test distinguishes between decisions generated by the governmental unit at the policy level and those generated at the operational level. *Id*. Under this test, a court ruled that the decision to release

11

water from a spillway constituted "policy formulation" for which the water district was immune, but the subordinate decision of determining the volume of the outflow was "policy implementation" for which it was not immune. *Id.* (citing *Bennett v. Tarrant Cnty. Water Control & Improvement Dist. No. 1*, 894 S.W.2d 441, 452 (Tex. App.—Fort Worth 1995, writ denied)). The second test distinguishes between the design of public works, for which there is immunity, and their maintenance, for which there is not. *Id.* Under this test, for example, the governmental unit retains immunity for designing a bridge without lighting, but may be liable for failing to maintain the lighting on a bridge that is designed to be illuminated. *Id.* at 657-58 (comparing holdings in *Tarrant County Water Control v. Crossland*, 781 S.W.2d 427, 433 (Tex. App.—Fort Worth 1989, writ denied) and *County of Cameron v. Brown*, 80 S.W.3d 549, 558 (Tex. 2002)).

Operational- or maintenance-level decisions are those involved in "carrying out" a policy, consisting of ministerial acts that require obedience to orders. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994); *State v. Terrell*, 588 S.W.2d 784, 787-88 (Tex. 1979); *see also Stanford v. State Dep't of Highways & Pub. Transp.*, 635 S.W.2d 581, 582 (Tex. App.—Dallas 1982, writ ref'd n.r.e.) (concluding that "maintenance" of structure is that which is required to preserve structure as it was originally designed and constructed). For instance, a TxDOT flagman at a construction or maintenance site is implementing, at the operational level, a previously made policy decision about how to control and protect traffic in and around its road construction and maintenance sites. *McClure v. Reed*, 997 S.W.2d 753, 756 (Tex. App.—Tyler 1999, no pet.) (citing *Mitchell v. City of Dallas*, 855 S.W.2d 741, 749 (Tex. App.—Dallas 1993), *aff'd*, 870 S.W.2d 21 (Tex. 1994)); *see City of Irving v. Seppy*, 301 S.W.3d 435, 442

(Tex. App.—Dallas 2009, no pet.) (distinguishing claimants' allegations of negligent maintenance and repair of structure, for which city was not immune, from claimants' allegation of negligence in "failing to properly design and/or build" structure).

By contrast, policy decisions are those taken at the planning level, *see Mitchell*, 855 S.W.2d at 745, which constitute "the execution of or the actual making of those policy decisions." *Terrell*, 588 S.W.2d at 788. As previously noted, the Texas Supreme Court has held that the "design of any public work, such as a roadway, is a discretionary function involving many policy decisions." *Ramirez*, 74 S.W.3d at 867 (quoting *Rodriguez*, 985 S.W.2d at 85). The court has further held that the governmental entity responsible for the discretionary decisions about the design of a roadway "may not be sued for such decisions." *Id.*; *Maxwell*, 880 S.W.2d at 464 (noting that when TxDOT utilizes engineering expertise and discretion in highway planning and design, the act remains in the agency's informed discretion and exempt from liability under section 101.056); *see also University of Tex. v. Amezquita*, No. 03-06-00606-CV, 2009 Tex. App. LEXIS 3872, at *5 (Tex. App.—Austin June 4, 2009, no pet.) (mem. op.) ("Plans formulated by state engineers are paradigmatic discretionary decisions immune from suit.").

**Summary-judgment evidence**

TxDOT's motion for summary judgment contends that, regardless of how the complaints are recast, Hathorn's pleadings and summary-judgment evidence—a great deal of which came from Hathorn's own experts—show that the alleged defective condition of the roadway stems from disagreement with decisions of the TxDOT engineer who was ultimately in charge of the roadway's design. Those design decisions included choices about paving material, which survey

to use, the design of the shoulder's slope, and acceptance of the project as being in substantial compliance with plans. But the core disagreement is with the TxDOT engineer's decision to rely on the plans and his direction to Capital to rely on the plans rather than diverting from the design to account for the few locations with different cross slopes noted in a random spot-check. Witness testimony about the differing cross slopes on other TxDOT projects and the plans themselves—which contained set values for the new pavement's cross slopes and acknowledged varying cross slopes of existing pavement—indicate that some tolerance for cross-slope difference was part of the roadway's design, not independent of it.[6]

Hathorn's experts devoted considerable attention to issues of TxDOT's roadway design. For example, Don L. Ivey questioned the "original design of this highway" which, although in compliance with policies of the American Association of State Highway and Transportation Officials, "could have been designed" with a different percentage of superelevation for the cross slope. A report from another of Hathorn's experts, James Scherocman, noted the potential for cross-slope differential *in the plans themselves*, because the plan sheet indicated that the cross slope of the existing roadway varied but the same plan sheet provided for a standard cross section on the new, outside portion of the roadway. Yet another of Hathorn's experts, John C. Glennon, testified about various actions that TxDOT should have taken from the design planning for the project to final acceptance of the roadway, but he ultimately acknowledged that all of those actions were design decisions and there was considerable discretion within the parameters of what would have allowed

---

[6] Capital's field engineer David Womack testified that he did not believe putting in the cross slopes called for in the plans would create a hazard or danger on the roadway, and that other TxDOT projects were built with cross slopes differing from the existing pavement.

14

for good pavement drainage.[7] Hathorn also put forth expert opinion from Raymond G. Helmer, who faulted the TxDOT engineer's cross-slope design decision—independent of any subsequent construction—as a probable source of the complained-of "groove," "crease," or "trough" in the pavement that led to the accumulation of water. He further concluded that if only TxDOT had responded or decided differently about using the cross-slope design set forth in the plans, the traffic accident made the basis of this suit might have been avoided.

The liability theory presented in this summary-judgment evidence makes a causal link between the TxDOT engineer's decisions about the design of the highway's cross slope, the complained-of pavement conditions, and the subject collision. That theory is based entirely on TxDOT's roadway design. Even taking the evidence in the light most favorable to Hathorn, the non-movant, it is clear that the negligence alleged by Hathorn arose not from faulty implementation of the plans, but from TxDOT's policy decision about the roadway's design. *Cf. Texas Dep't of Transp. v. Olivares*, 316 S.W.3d 89, 105 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (noting that it was "unclear" whether tollway's "minimal road shoulders" resulted from negligent implementation or formulation of policy).

---

[7] Glennon's testimony also accords generally with the authority vested in the State's engineer under TxDOT's "Standard Specifications for Construction and Maintenance of Highways, Streets, and Bridges," which Hathorn provided in his summary-judgment response. The Specifications include provisions that the "Engineer acts as a referee in all questions arising under the terms of the Contract," the "Engineer's decisions will be final and binding," the "Engineer reserves the right to make changes in the work, including addition, reduction, or elimination of quantities and alterations needed to complete the Contract," and the engineer may determine the limits of whether work is performed in "reasonably close conformity" with the requirements of the Contract.

15

Further, the TxDOT engineer's cross-slope decision for this project is different from the operational-level decisions at issue in the cases Hathorn cites—settings of water sprinklers, maintenance of bleachers, jailers' decisions to prioritize booking inmates over doing cell checks, driving decisions by a highway patrol officer in pursuit of a speeding vehicle, and upkeep or building of a wired-rock wall. *See Flynn*, 228 S.W.3d at 658; *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 755 (Tex. 1995); *Terrell*, 588 S.W.2d at 788; *University of Tex. at San Antonio v. Trevino*, 153 S.W.3d 58, 63 (Tex. App.—San Antonio 2002, no pet.); *Mitchell*, 855 S.W.2d at 745 (noting conflict of authority on whether construction activities are characterized as immune). Rather, the cross-slope decision here is precisely the type of highway-design, policy-level decision to which courts apply the discretionary-function exception. *See Ramirez*, 74 S.W.3d at 867; *Rodriguez*, 985 S.W.2d at 85; *Van Gelder*, 304 S.W.3d at 454; *Maxwell*, 880 S.W.2d at 463, 464.[8]

---

[8] The concurring justices in *Flynn* questioned the utility of the operational/maintenance-level or policy-level classifications in determining whether certain decisions are discretionary under the Texas Tort Claims Act. *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 661-62 (Tex. 2007) (Hecht, J., concurring). They stated that determination of whether decisions are discretionary and entitled to immunity under the Texas Tort Claims Act should be guided by factors considered in the discretionary-function exception to the Federal Tort Claims Act, which covers only "decisions grounded in social, economic, and political policy," or more succinctly, "decisions that represent a 'policy judgment.'" *Id*. at 662 (citing *United States v. Gaubert*, 499 U.S. 315, 323 (1991); *id.* at 335 (Scalia, J., concurring)). Application of the federal factors strengthens the conclusion that a TxDOT engineer's decision to follow cross-slope values in plans is discretionary and immune from suit. The Texas Supreme Court has long recognized the legislative delegation of responsibility to the State's highway agency (TxDOT) for policy decisions about state highways:

> "We do not deem it necessary to state the provisions of the Highway Statutes. They do, of course, create an agency in which are vested powers to *formulate and execute plans and policies* for the location, construction and maintenance of a comprehensive system of State highways and public roads."

16

***TxDOT v. Ramirez* precedent**

TxDOT's motion also argued that Hathorn's allegations are akin to the allegations about a road's slope and safety features that the supreme court rejected as being discretionary decisions for which TxDOT retained immunity in *Ramirez*. *See* 74 S.W.3d at 867; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.056 (providing discretionary-function exception to Texas Tort Claims Act's waiver of immunity). The claimant in *Ramirez* alleged that her husband's fatal collision was the result of TxDOT's failure to correct or warn of a dangerous highway condition that allowed a car to cross a median and hit her husband's car. *Ramirez*, 74 S.W.3d at 865. To support her suit, the claimant alleged that the highway's condition was "dangerous," that there had been numerous prior collisions involving vehicles crossing the median at that location, that the defect was the "slope of the northbound lanes in relation to the southbound lanes and slope of the grassy median," and that TxDOT failed to install safety features. *Id*. at 866. The claimant also offered her expert's conclusion that TxDOT "could have remedied the dangerous condition" by installing barriers or guardrails or "by flattening the median's slope." *Id*. at 867.

Relying on its prior holding in *State v. Rodriguez*, 985 S.W.2d 83, 85 (Tex. 1999), the supreme court noted that the "design of any public work, such as a roadway, is a discretionary function involving many policy decisions, and the governmental entity responsible may not be

*Robbins v. Limestone Cnty.*, 268 S.W. 915, 917 (Tex. 1925) (emphasis added). Thus, TxDOT's design decisions about state highway cross slopes involve performance of its legislatively delegated function and subjecting such decisions to judicial scrutiny has separation-of-powers implications. *Cf*. Tex. Gov't Code Ann. § 311.034 (West Supp. 2011) (recognizing "[L]egislature's interest in managing state fiscal matters through the appropriations process"); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695-96 (Tex. 2003) (noting that Legislature, rather than judiciary, is better suited to balance conflicting policy issues associated with waiving immunity).

sued for such decisions." *Ramirez*, 74 S.W.3d at 867 (quoting *Rodriguez*, 985 S.W.2d at 85). The court also noted, based on its holding in *State v. Miguel*, 2 S.W.3d 249, 251 (Tex. 1999), that a governmental entity's decisions about the installation of safety features, such as warning signs, "are discretionary decisions for which it may not be sued." *Id*.; *Miguel*, 2 S.W.3d at 251; *Maxwell v. Texas Dep't of Transp*., 880 S.W.2d 461, 463 (Tex. App.—Austin 1994, writ denied); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.056. Given these precedents, the court concluded that "the median's slope and lack of safety features . . . reflect[ed] discretionary decisions for which TxDOT retain[ed] immunity under the Act's discretionary-function exception. Thus, [the claimant]'s petition d[id] not state a premise-defect claim under the Act." *Id*. (citations omitted); *see also Brazoria Cnty. v. Van Gelder*, 304 S.W.3d 447, 454 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (concluding that even if pavement sloped at steep or abrupt angle, roadway's design reflected discretionary act for which governmental unit retained immunity); *Berry v. City of Reno*, 107 S.W.3d 128, 132-33 (Tex. App.—Fort Worth 2003, no pet.) (holding that section 101.056(2) of civil practice and remedies code barred plaintiffs' suit based on allegedly negligent "design and construction" of roadway's drainage system); *Maxwell*, 880 S.W.2d at 464 (recognizing that although TxDOT relied on engineering expertise and discretion in planning and design of culvert, such action "remain[ed] in the informed discretion of the agency and exempt from liability under section 101.056(2)").

Here, as in *Ramirez*, all of Hathorn's complaints against TxDOT for a premise or special defect concern the highway's allegedly improper design. The uncontroverted summary-judgment evidence shows that the complained-of cross slope was itself sufficient to create the complained-of "groove," "crease," or "trough" in the pavement—independent of any subsequent

18

construction—which Hathorn alleges to have caused the accident. TxDOT retains sovereign immunity from suit for these discretionary decisions about highway design. *Ramirez*, 74 S.W.3d at 867; *see* Tex. Civ. Prac. & Rem. Code Ann. § 101.056.

Based on the uncontroverted summary-judgment evidence, we hold that TxDOT conclusively established its sovereign immunity from Hathorn's suit as a matter of law under the discretionary-function exception and that there was no evidence presenting a genuine issue of material fact to refute TxDOT's sovereign-immunity defense. Accordingly, the probate court erred in denying TxDOT's traditional motion for summary judgment.

## CONCLUSION

Having sustained TxDOT's sole issue, we reverse the probate court's order denying TxDOT's motion for summary judgment, conclude that TxDOT has sovereign immunity for Hathorn's claims, and render judgment in favor of TxDOT.

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton and Rose

Reversed and Rendered

Filed: July 19, 2012

19