# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00591-CV

**City of Bastrop, Appellant**

**v.**

**Chyanne M. Bryant, Appellee**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
### NO. 29,032, HONORABLE CHRISTOPHER DARROW DUGGAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellee Chyanne M. Bryant sued the City of Bastrop, seeking money damages for personal injuries she allegedly suffered in one of the City's public parks. The City countered with a plea to the jurisdiction, asserting governmental immunity and challenging, through evidence, the existence of facts necessary to invoke the relevant statutory waivers on which Bryant could rely.[1] Bryant filed a response with additional evidence. The district court denied the City's plea, and the City perfected this appeal from that order,[2] contending that the evidence before the district court failed to raise a fact issue material to jurisdiction.[3] Based on the evidence presented, controlling Texas Supreme Court precedents, and the narrowness of the statutory waiver of immunity on which

---

[1] *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–29 (Tex. 2004) (holding that these types of jurisdictional challenges are permitted and describing the procedure for deciding them).

[2] *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8).

[3] *See Miranda*, 133 S.W.3d at 227–28, 232.

jurisdiction depends in this case, we must reverse the district court's order and render judgment dismissing Bryant's suit for want of jurisdiction.[4]

At least for purposes of the City's plea, the basic underlying facts are undisputed. During the late afternoon of May 23, 2011, while on an outing with her younger siblings in the City's Fisherman's Park,[5] Bryant, then nineteen years of age, was injured while swinging on a swing set located in a children's playground or "Playscape" area of the park. The swing on which she was riding consisted of a sling-like seat suspended from the equipment's frame by two chains, with the upper end of each chain secured by or in a metal bracket affixed to the frame. According to Bryant, while she was arcing to and fro on the swing, one of these brackets broke or otherwise failed, causing its chain to detach suddenly, "catapulting" her to the ground. Bryant was subsequently transported to the UMC Brackenridge emergency room, and she seeks monetary recovery from the City for her medical expenses, among other damages. In her live pleadings, she relies on tort theories that sound in negligence—more specifically, premises liability—alleging chiefly that the bracket failure was

---

[4] We will assume the reader's familiarity with the analytical framework and standard of review prescribed in *Miranda*. *See id*. at 226–29; Tex. R. App. P. 47.1. Because Bryant has opted not to file an appellee's brief, we have looked to her filings in the district court to ascertain the jurisdictional theories on which she relies.

[5] Fisherman's Park is the large public park located along the Colorado River just north of Loop 150 as it enters Bastrop's historic downtown from the west. Community members and friends will also recognize Fisherman's Park as the site of the City's annual Patriotic Festival.

the foreseeable result of an "extremely hazardous" and "dangerous" condition created by the City's failure to perform "adequate" or "proper" inspections and maintenance on the swing set.[6]

There is no question that Bryant's suit implicates the City's governmental immunity,[7] and she has attempted to invoke the district court's subject-matter jurisdiction through the Texas Tort Claims Act (TTCA).[8] The TTCA waives the City's governmental immunity to the extent of creating limited damages liability under certain specified theories of recovery.[9] As pertinent to Bryant's premises-liability claim, the TTCA waives immunity so as to permit recovery for "personal injury and death so caused by a condition . . . of . . . real property if the governmental unit would, were it

---

[6] *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) (explaining that premises-defect claims are "based on the property itself being unsafe" and distinguishing that theory from a "negligent activity claim," which "requires that the claimant's injury result from a contemporaneous activity itself rather than from a condition created on the premises by the activity," and further emphasizing that "[w]e have rejected attempts to blur the distinction between these two claims." (citing *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992))).

[7] *See, e.g.*, *City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007) (municipalities derive governmental immunity from State's sovereign immunity when performing "governmental" functions); *see also* Tex. Civ. Prac. & Rem. Code §§ 101.0215(a)(13), (23) (classifying provision of "parks" and "recreational facilities" as "governmental" functions for purposes of Tort Claims Act).

[8] *See generally* Tex. Civ. Prac. & Rem. Code §§ 101.001–.109.

[9] *Id*. § 101.021 (specifying theories of recovery under the Act); *see id.* §§ 101.023 (limiting amount of money damages for which governmental unit may be held liable), .024 (providing that TTCA does not authorize exemplary damages), .025 (waiving immunity from suit and liability to extent of liability TTCA creates).

One consequence of this statutory structure is that the jurisdictional question overlaps the merits of the claim. *Suarez v. City of Texas City*, No. 13-0947, 2015 WL 3802865, at *5 (Tex. June 19, 2015) ("The immunity waiver is therefore intertwined with the merits of a claim under the Act."). This is why the *Miranda* summary-judgment-like analysis governs the City's evidence-based jurisdictional challenges. *See Miranda*, 133 S.W.3d at 226–28.

3

a private person, be liable to the claimant according to Texas law,"[10] but subject to the qualification (with exceptions not applicable here) that "the governmental unit owes to the claimant only the duty [of care] that a private person owes to a licensee on private property."[11] This standard would require Bryant to plead and ultimately prove, with respect to the duty of care the City owed her, that (1) a condition of the swing set created an unreasonable risk of harm to her; and (2) the City actually (as opposed to constructively) knew of the condition at the time of her fall.[12] Bryant must similarly plead and prove the remaining elements of the negligence tort, including a causal linkage between the allegedly unsafe condition of the swing set and the bracket failure that preceded her injuries.[13]

However, the Legislature has raised the bar still higher for Bryant (and, correspondingly, lowered it for the City in terms of its duties and liability exposure) through the

---

[10] Tex. Civ. Prac. & Rem. Code § 101.021(2).

[11] *Id*. § 101.022(a).

[12] *See, e.g.*, *City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2006) (per curiam) (citing *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)).

Before the district court, Bryant attempted to couch her claim not only in terms of a premises-liability theory, but also as one complaining of injury from a "use" of the City's property, potentially an independent avenue of waiver under the TTCA that would not be governed by the duty limitation imposed by section 101.022. *See* Tex. Civ. Prac. & Rem. Code §§ 101.021(2), .022. However, the Texas Supreme Court has held that "[t]he Tort Claims Act's scheme of a limited waiver of immunity from suit does not allow plaintiffs to circumvent the heightened standards of a premises defect claim contained in section 101.022 by re-casting the same acts as a claim relating to the negligent condition or use of tangible property." *Miranda*, 133 S.W.3d at 233 (citing *State v. Tennison*, 509 S.W.2d 560, 562 (Tex. 1974)). Consequently, Bryant can invoke the district court's jurisdiction only by pleading and ultimately proving the elements of the statutory waivers that govern premises-liability claims, including the requirements imposed by section 101.022.

[13] *City of Bellmead v. Torres*, 89 S.W.3d 611, 614 (Tex. 2002) ("In a premises defect case, the dangerous condition must be a cause of the resulting injury. . . . Stated another way, even though there is a premises defect, if it in no way contributes to an injury, it cannot be the basis for a cause of action for the premises defect.").

4

Recreational Use Statute.[14] That statute deems Bryant to have the legal status of a trespasser in Fisherman's Park and effectively restricts the TTCA's waiver solely to intentional or grossly negligent conduct by the City in regard to the alleged injury-causing condition of the swing set.[15] Gross negligence requires that (1) the injury-causing condition presented an extreme degree of risk, considering the probability and magnitude of harm to others, when viewed objectively from the City's standpoint at the time of Bryant's fall; and that (2) the City had actual, subjective awareness of that condition and attendant risk, yet proceeded with conscious indifference to the rights, safety, and welfare of others.[16] "'In other words, [Bryant] must show that the [City] knew about the peril, but [its] acts or omissions demonstrate that [it] did not care.'"[17]

---

[14] *See generally* Tex. Civ. Prac. & Rem. Code §§ 75.001–.007; *see also id.* § 75.001(3)(L) (defining "recreation" to include activities "associated with enjoying nature or the outdoors"); *Torres*, 89 S.W.3d at 615 ("recreation" under the statute includes "sitting on a swing").

[15] *See* Tex. Civ. Prac. & Rem. Code §§ 75.002(c), (d), .003(d)–(g); *see also Suarez*, 2015 WL 3802865, at *1, 5–7 (explaining the relationship between TTCA and Recreational Use Statute as they apply to a premises-liability theory); *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 659–60 (Tex. 2007) (same); *Shumake*, 199 S.W.3d at 284–88 (same).

The City has not contended that it owes Bryant *no* duty of care in regard to the swing set's condition, only that its duty is limited to avoiding intentional or grossly negligent conduct. *Cf. City of Waco v. Kirwan*, 298 S.W.3d 618, 622–27 (Tex. 2009) (holding that under Recreational Use Statute, municipality owed no duty in regard to death caused by naturally occurring condition); *Shumake*, 199 S.W.3d at 288 (indicating that landowner would owe no duty under Recreational Use Statute in regard to "obvious" defects or conditions).

[16] *See Suarez*, 2015 WL 3802865, at *7 (citing *Flynn*, 228 S.W.3d at 660 (citing Tex. Civ. Prac. & Rem. Code § 41.001(11)); *Louisiana-Pac. Corp. v. Andrade*, 19 S.W.3d 245, 246 (Tex.1999)); *Shumake*, 199 S.W.3d at 288.

[17] *Suarez*, 2015 WL 3802865, at *7 (quoting *Andrade*, 19 S.W.3d at 246–47) (alterations omitted).

The majority of factual allegations in Bryant's live pleadings[18] are to the effect that the City had *constructive* knowledge of the swing set's allegedly perilous condition (i.e., that it *should have* known of the condition or done more to discover it) or otherwise was aware that the swing set could or would degrade into a hazardous condition if not properly maintained.[19] Without more, such facts would not suffice to establish a waiver of immunity even under the TTCA's general requirements governing premises-liability claims—which, again, require *actual* knowledge that the defect existed at the time of injury—let alone satisfy the Recreational Use Statute's gross-negligence standard.[20] However, liberally construing Bryant's pleadings, as we must do,[21] she also asserts that a City employee had inspected the swing set on the same day as, but prior to, her fall; thereupon witnessed wear and tear he knew to present a serious risk of imminent bracket failure; yet consciously chose not to report the defect or do anything else to alleviate the risk it presented. The chief focus of the City's plea was to present evidence that would negate the existence of such actual knowledge or conscious awareness on its part.

---

[18] *See Miranda*, 133 S.W.3d at 226 (claimant has initial burden to allege facts that affirmatively demonstrate trial court's jurisdiction).

[19] E.g., "the swing set's dangerous condition was obvious to a maintenance professional"; "it was foreseeable that the swing was going to have a failure"; "[i]f the City had conducted reasonable investigation into the condition of the swing set, the incident would not have occurred."

[20] *See, e.g.*, *City of Denton v. Paper*, 376 S.W.3d 762, 767 (Tex. 2012) (per curiam) ("'Awareness of a potential problem is not actual knowledge of an existing danger.'" (quoting *Reyes v. City of Laredo*, 335 S.W.3d 605, 609 (Tex. 2010) (per curiam))); *City of Corsicana v. Stewart*, 249 S.W.3d 412, 414–15 (Tex. 2008) (per curiam) ("Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge which can be established by facts or inferences that a dangerous condition could develop over time.").

[21] *See Miranda*, 133 S.W.3d at 227–28 (courts are to construe claimant's live pleadings liberally and in favor of jurisdiction).

The principal evidence on which the City relied was the affidavit of Jason Alfaro, who indicated that he had been employed in the City's Parks and Recreation Department since 2002 and had served as a foreman in the Department between 2006 through the time of Bryant's fall in 2011.[22] Alfaro testified that as part of normal Department operations, he or another Department employee would "personally perform a visual inspection of the Fisherman's Park every second week" that included an examination of the swing set there. That procedure, Alfaro elaborated, "includes examining the swing-set for cracked seats, cracked or broken chains, frame welds, loose S-hooks, or any other condition that would compromise the integrity of the swing set." "More specifically," he explained, "we look for tears in the seats [and] wear and tear on the chains, and check the brackets at the top of the swing."

In conjunction with each inspection, Alfaro added, a record would be completed reflecting the condition of the playground equipment and park grounds and whether any areas needed repair or attention. Attached to Alfaro's affidavit, and proven up by him as City business records, were copies of these records from inspections that had been performed not only at Fisherman's Park but other City parks between November 2010 and November 2011. The documents further reflect, consistent with Alfaro's testimony, that Department employees (principally Alfaro) had conducted these inspections at each park at roughly biweekly intervals, with a total of eight performed at Fisherman's Park between November 2010 and the date of Bryant's fall, May 23, 2011. Each record consisted of a one-page "Parks Facility and Playscape Checklist" that inquired about thirteen features of "Playscape" and eighteen features of "Park Grounds." Among the former areas of inquiry were

---

[22] Alfaro added that he had subsequently been promoted to Parks Superintendent in August 2012 and was serving in that role at the time he executed his affidavit.

7

"SWINGS," specifically whether there were "SEATS CRACKED/CRACKED OR BROKEN CHAINS/FRAME WELDS/LOOSE HOOKS." Below the checklists, the form requested a narrative response to "LIST ANY AREAS THAT NEED REPAIRS OR IMPROVEMENTS."

These records and Alfaro's testimony further bore out that, as Bryant has alleged, a Department inspection had been performed at Fisherman's Park on May 23, 2011, prior to Bryant's fall. That inspection had been conducted by Alfaro personally, and he recounted, "In my visual inspection of the swing-set, I did not find any indication that the swing set was defective," nor did he "see the metal wearing thin at the bracket" or "any severe rust or discoloration that would provide any indication of a dangerous condition on the swing-set." If he had detected any of these problems, Alfaro averred, he would have so indicated on the maintenance record corresponding to that date's inspection and repaired it. The corresponding maintenance record indeed reflects that while Alfaro noted problems in other areas of the playscape and park grounds,[23] he reported no perceived issues with the swings.[24] Alfaro added that he was "unaware of any other occasion when a bracket failed at the City of Bastrop under the same or similar circumstances."

The City's evidence would indeed negate Bryant's allegation that it had acquired actual knowledge of an unsafe condition of the swing set that was subsequently a cause of her fall, not to mention the conscious indifference regarding that risk that is necessary to establish gross negligence and the waiver of immunity. It was thus incumbent upon Bryant to present evidence

---

[23] E.g., a missing "keep park clean" sign in the playscape area.

[24] Incidentally, Alfaro also explained that the Fisherman's Park "Playscape" area where the swing set is located "is intended for children between the ages of 3 and 12" and that a sign "directly in front of the swing-set"—and present at the time of Bryant's fall—so advises park users. He also proved up an attached photo of that sign. As previously noted, Bryant was nineteen years of age at the time of her fall.

8

sufficient to demonstrate that "there is a disputed material fact regarding the jurisdictional issue."[25] She failed to do so.

Bryant's evidence was limited to: (1) a copy of her pleadings (which cannot suffice to raise a fact issue in the face of contrary jurisdictional evidence[26]); (2) copies of City documents reflecting its repairs and maintenance of parks between December 2010 and November 2011 (which include, but are not limited to, the same checklists from Fisherman's Park inspections on which the City had relied); (3) photographs of the detached swing, which would appear to corroborate Bryant's allegation that a metal bracket securing her swing to the equipment's frame had broken; and (4) a publication from the U.S. Consumer Products Safety Commission titled "Public Playground Safety Handbook," which sets forth "recommended guidelines" intended to "promote greater safety awareness among those who purchase, install, and maintain public playground equipment"[27] and help "contribute to greater playground safety." Similar to the legal theories advanced in her pleadings, Bryant has relied on this evidence principally to establish what she perceives to be the inadequacy of the inspections and maintenance the City performed on the swing set in advance of her fall, not as proof that could controvert Alfaro's testimony that he detected no defects or hazards during the inspection he actually made on May 23, 2011.

The closest Bryant comes to attacking the City's evidence regarding actual knowledge is to point to City maintenance records indicating that some repairs had been made to the swings

---

[25] *Miranda*, 133 S.W.3d at 228.

[26] *Id*. The pleadings did attach what purported to be copies of Bryant's medical records, but neither party has asserted that these records are material to jurisdiction.

[27] Defined as that intended for the use of children between six and twelve years of age.

during the months prior to her fall.[28]  Specifically, these records reflect that City employees spent a total of fourteen hours "replacing swings" on January 5 and 6, 2011; that Alfaro had observed a cracked or broken chain on February 21, with a repair made on February 22; and that Alfaro had reported a "worn out ubolt/hook" on March 21.  In the interim, checklists from inspections made by Alfaro on January 10, January 24, February 7, March 7, April 4, April 18, May 2, and (as previously indicated) May 23 indicated no reported issues with the swing set.  Under the Texas Supreme Court's precedents, the fact that the City had made these prior repairs would, at most, merely be evidence of its knowledge that the swing set would periodically require repair.  It does not support a reasonable additional inference that the City actually knew of such a need for repair at the time of Bryant's fall, let alone an inference that it was consciously indifferent to the

---

[28] Bryant also references various issues and repairs made subsequent to May 2011, but none of these are probative of the City's actual knowledge of a defect at the time Bryant fell.  *See, e.g.*, *Stewart*, 249 S.W.3d at 415 (no fact issue regarding actual knowledge; "responding officer's statements regarding the road conditions he encountered en route to [Stewart's accident] and the numerous flood-related calls the City received after he left the scene of [Stewart's] accident describe the City's knowledge of the weather and road conditions after the accident occurred, not before"); *City of Dallas v. Hughes*, 344 S.W.3d 549, 557 (Tex. App.—Dallas 2011, no pet.) (complaints left on city's voicemail over the weekend and not retrieved until after accident did not create a fact issue as to city's actual knowledge of bridge's condition at time of accident).

risks presented by such a condition.[29]  Mere "'[a]wareness of a potential problem is not actual knowledge of an existing danger.'"[30]

As a final rejoinder, Bryant has suggested that her premises-liability theory is not predicated solely on an asserted hazardous condition of the swing set, but also on a dangerous condition presented by the absence of "protective surface material" below the swing set. She observes that in Alfaro's May 23, 2011 inspection report, he noted "insufficient fibar in playground area," and that he had reported similar problems in each of the four previous inspections of Fisherman's Park.[31]  As an initial observation, Bryant never pleaded this theory of liability despite ample opportunity to add it by amendment.  Nor did she demonstrate that the claim would be viable even if she did.  For one, Bryant did not present evidence sufficient to permit a reasonable inference that the absence of "fibar" (the nature or properties of which is never explained in the record) would

---

[29] *See Stewart*, 249 S.W.3d at 415–16 (city's knowledge of inclement weather on night of accident and that crossing tended to flood during heavy rains did not raise fact question as to city's actual knowledge that dangerous condition existed at time of accident); *Thompson*, 210 S.W.3d at 603 (city's knowledge of periodic protrusion of expansion-joint cover plate and need for inspection and maintenance was not evidence of its actual knowledge of protrusion at time of injury); *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 100–02 (Tex. 2000) (defendant's knowledge that its stair and platform units periodically became unstable was not evidence units were unreasonably dangerous, nor evidence of actual or constructive knowledge that unit had become dangerous when plaintiff was injured); *State v. Gonzalez*, 82 S.W.3d 322, 330 (Tex. 2002) (evidence that State "knew the [traffic] signs had been repeatedly vandalized does not indicate, either directly or by reasonable inference, that [it] actually knew the signs were down before the accident occurred"); *see also City of Austin v. Leggett*, 257 S.W.3d 456, 476 (Tex. App.—Austin 2008, pet. denied) (evidence that outflow from pond had become clogged on one prior occasion fell short of supporting inference that City actually knew grate had become clogged again or that intersection had flooded at time of accident).

[30] *Paper*, 376 S.W.3d at 767 (quoting *Reyes*, 335 S.W.3d at 609).

[31] On March 21, 2011, April 4, April 18, and May 2.

11

present the sort of "extreme degree of risk" whose disregard would characterize gross negligence.[32]

Moreover, whether the ground below the Fisherman's Park swings is or is not covered by "fibar," cushioned, or soft as opposed to hard would appear to concern the sort of open and obvious risks for which the City would not owe a duty to Bryant under the Recreational Use Statute.[33]

The preceding holdings require us to reverse the district court's order denying the City's plea and render judgment dismissing Bryant's suit for want of subject-matter jurisdiction.[34]

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Bourland

Reversed and Dismissed

Filed: August 27, 2015

---

[32] *See, e.g.*, *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 21–22 (Tex. 1994) ("[The] test for gross negligence 'contains both an objective and a subjective component.' . . . Objectively, the defendant's conduct must involve an 'extreme degree of risk.' . . . [T]he 'extreme risk' prong is not satisfied by a remote possibility of injury or even a high probability of minor harm, but rather 'the likelihood of serious injury' to the plaintiff." (quoting *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 326–27 (Tex. 1993) (emphasis omitted))); *see also Flynn*, 228 S.W.3d at 660 (allegations failed to demonstrate that sprinkler presented extreme risk, and plaintiff also conceded she was aware of sprinkler before she encountered it).

[33] *See Shumake*, 199 S.W.3d at 288.

[34] *See Miranda*, 133 S.W.3d at 232, 234.