**REVERSE and RENDER and Opinion Filed August 20, 2024**



In The
## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-23-00979-CV

**CITY OF WHITESBORO, TEXAS, Appellant
V.
DIANA MONTGOMERY, Appellee**

**On Appeal from the 59th Judicial District Court
Grayson County, Texas
Trial Court Cause No. CV-21-0615**

## MEMORANDUM OPINION

Before Justices Reichek, Carlyle, and Miskel
Opinion by Justice Reichek

In this interlocutory appeal, the City of Whitesboro, Texas challenges the trial court's denial of its plea to the jurisdiction. Bringing two issues, the City argues the trial court abused its discretion in denying its objections to Diana Montgomery's evidence and in denying the City's motion for no-evidence and traditional summary judgment in support of its plea. Because we conclude the City's immunity was not waived for the personal injury claims asserted against it in this case, we reverse the trial court's order and render judgment dismissing Montgomery's claims for lack of jurisdiction.

## Background

The events giving rise to this action occurred at the Whitesboro Community Swimming Pool which is owned and operated by the City. Before the start of the 2019 swimming season, Penny Renfroe, the City's Parks and Recreation Director, Dare Nolan, the Director of Aquatics, and Jen Rue, the Assistant Pool Manager, decided to make changes to the men's and women's restroom facilities. Renfroe testified the floor mats used in the restrooms made cleaning the floor difficult and constituted a tripping hazard. Although there were no reported falls, Renfroe stated she had seen people catch their foot on the elevated edges of the mats. After considering different options, they decided to remove the mats and refinish the restroom floors with an epoxy that contained a gritty, non-slip additive.

After the floors were refinished, the Grayson County Health Department inspected the pool facility including the restrooms. With the new floor surface in place and the mats removed, the health department determined the pool's dressing and sanitary facilities were "properly installed, cleaned, and maintained." On May 20, the department issued a permit allowing the pool to open for the 2019 season.

The Whitesboro pool is an American Red Cross certified facility and hires only Red Cross certified life guards. Renfroe testified that, as part of their orientation, the lifeguards are trained how to clean the restroom area and what to use to clean it. At the close of every day, a checklist is used and signed to ensure that all the cleaning procedures have been done. Open swimming ends at 6:00 p.m., and

the pool staff takes care of the cleaning responsibilities before the evening activities start at 6:30.

On the afternoon of May 28, Rue was informed by an adult patron at the pool that two girls were playing with shampoo in the women's restroom. As Rue walked toward the restroom, she encountered Hailey Armer, the lead lifeguard. Armer had just finished her rotation and was going to take a half-hour break. Armer told Rue she would clean the restroom during her break. The cleaning process took longer than the break period, so Armer requested another lifeguard cover her next rotation at the pool. As part of the cleaning process, Armer hosed down the floor and used a squeegee to remove the excess water.

During the time the restroom was being cleaned, it was closed to the public. Two girls approached Rue saying they needed to use the facilities and Rue escorted them inside the closed restroom. While waiting for the girls, Rue observed the floor and did not see any bubbles or other substances. Rue had no concerns at that time about the condition of the floor and did not believe it represented a safety hazard.

There were two evening water aerobics classes on May 28; one beginning at 6:30 p.m. and the other beginning at 7:30. The first class had seventeen participants and the second class had eight participants. The instructor for both classes was Diane Fielding. Fielding paid the City a percentage of the fees she collected from the participants in her classes to be able to use the pool. She testified she was not employed by the City, and the City had no control over her work.

Montgomery arrived at the pool at 7:15 for the 7:30 class. Also attending the 7:30 class was Montgomery's friend, Barbara Blessing. Blessing testified that, toward the end of the class, she left the pool to use the restroom. As she entered the restroom she noticed she "slid just a little bit."

Montgomery testified that, after finishing Fielding's class, she walked to the restroom. She stated she did not think she dried off before going inside and did not recall seeing any standing water or soapy or oily substances on the floor. About halfway into the room, her left foot slipped and she fell to the floor. Montgomery stated she slipped on soap.

From inside one of the bathroom stalls, Blessing heard a loud "thump" and a "very pained voice" calling out her name. Blessing exited the stall and found Montgomery lying on the floor. She went to help Montgomery as other members of the class entered the room. Blessing stated the other class participants were having trouble coming into the area because the floor was "very slick."

Fielding came into the restroom and asked how Montgomery was doing. Montgomery stated that Fielding told everyone present that two girls had been playing with soap pods in the restroom earlier and they were supposed to have cleaned it up, but must have "missed some of the soap." Blessing said Fielding told them there were "a couple of lifeguards [] throwing soap pods at each other when [she] came in . . . before class started" and "it was very slick." Fielding denied

–4–

making these statements and said she did not learn about girls having a "shampoo or soap fight" in the restroom until she spoke with Armer the next day.

Montgomery was eventually helped to her feet by one of the lifeguards on duty. Before leaving the pool, Montgomery signed an incident report stating she had slipped in the women's restroom and sustained a bruised left arm and scuffs on her left thigh. She was then helped to her car and taken to the emergency room.

Montgomery brought this suit against the City alleging a claim for "premises liability / premises defect – gross negligence." Her live pleading alleges that, as a result of her fall in the restroom, she suffered "broken bones, torn ligaments, severe pain, and disorientation." In support of her claim, Montgomery alleged the City was grossly negligent by:

> a) failing to provide a safe walkway inside the public restroom for patrons and within Defendant's premises;
>
> b) removing the anti-slip mats from the restroom prior to hosting events for Plaintiff and other elderly attendees;
>
> c) creating an extremely dangerous condition on the premises involving tangible personal property, that is in creating a slick and unclean restroom floor covered in soap after employees fought with "soap pods;"
>
> d) ignoring this foreseeable and preventable hazard, failing to take reasonable steps to discover[] and correct the hazard, especially considering the vulnerable nature and age of Plaintiff and her fellow classmates;
>
> e) failing to warn Plaintiff of the existence of the hazardous and unreasonably dangerous condition of the premises although one of its employees created the dangerous condition and/or the dangerous

condition had existed on the premises for such a period of time that it should have been discovered and corrected by Defendant;

f) failing to prevent negligent activity on its premises;

g) failing to provide, incorporate, and/or abide by safety protocols;

h) failing to develop and implement adequate policies and procedures for the hiring, training, and supervision of its employees;

i) failing to ensure that its employees were aware of potential dangers and that such employees followed proper policies and procedures for patron and tenant safety; and

j) failing to properly train and supervise its employees so as to avoid creating an unreasonable risk of harm to patrons and tenants.

The City answered and filed a plea to the jurisdiction asserting there was no waiver of the City's governmental immunity for Montgomery's claims.

In its motion for no-evidence and traditional summary judgment in support of the plea, the City argued there was no evidence to show it was grossly negligent as required by the recreational use statute which limits the City's liability under the Texas Tort Claims Act ("TTCA"). Montgomery responded that she had sufficient evidence to create a fact issue on the City's gross negligence based, in part, on the alleged statements made by Fielding that lifeguards had been playing with soap in the restroom before the start of the water aerobics class and did not sufficiently clean the floor afterwards. The City objected and moved to strike the testimony about Fielding's alleged statements on the ground that it was inadmissible hearsay. The trial court denied both the City's motion to strike and its plea to the jurisdiction. This appeal followed.

**Analysis**

**I. Motion to Strike**

In its first issue, the City contends the trial court erred in overruling its objections to Montgomery's and Blessing's testimony about statements allegedly made by Fielding on the night of the accident. The City objected to the testimony on the ground that it was hearsay. Hearsay is defined as an out-of-court statement offered into evidence to prove the truth of the matter asserted. TEX. R. EVID. 801. Such evidence is inadmissible unless it falls under a recognized exception. *Id*.; TEX. R. EVID. 803. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Fleming v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020).

The testimony concerning what Fielding allegedly said on the night Montgomery fell was clearly intended to prove the truth of the matters asserted – that City employees had created a hazard by playing with soap in the restroom and failing to sufficiently clean it up. In addition to the fact that Fielding denied under oath making these statements, we conclude the evidence does not fit into any of the exceptions to the hearsay rule that would render it admissible.

Montgomery argues the statement does not constitute hearsay because it is a statement made by a party's agent or employee on a matter within the scope of that relationship. *See* TEX. R. EVID. 801(2)(D). Montgomery's sole evidence of an employment relationship between Fielding and the City is a Rule 194 disclosure provided by the City in an earlier, nonsuited lawsuit brought by Montgomery based

on the same facts. In the disclosure, the City listed "Diane Felding" as a person with knowledge of relevant facts and stated she was "Defendant's employee present at the pool at the time of Plaintiff's fall." At Fielding's deposition in this case, however, the attorney who drafted the disclosure informed Montgomery's counsel she was mistaken about Fielding being an employee. Opposing counsel acknowledged the error and said she was "going to skip a whole page of questions." She then asked Fielding about the financial arrangement she had with the City that allowed her to use the City's pool and lifeguards. Fielding later testified in an affidavit that it appeared everyone at her deposition understood she was not a City employee, and the City's counsel had simply made an error in the disclosure.

Because Montgomery nonsuited the case in which the erroneous disclosure was made, the City could not amend its answer once the error was discovered. *See* TEX. R. CIV. P. 193.5. We conclude the disclosure, acknowledged by both sides as a mistake, is insufficient to create a fact issue about whether Fielding was a City employee. *Cf. Frazer Transp., Inc. v. Transafe, Inc.*, No. 01-16-00824-CV, 2017 WL 3081243, at *4 (Tex. App.—Houston [1st Dist.] July 20, 2017, no pet.) (mem. op.) (party cannot rely on disclosure error while having correct information).

Montgomery additionally argues Fielding can be considered an agent of the City under the TTCA's definition of "employee." Section 101.001(2) of the TTCA defines an "employee" as,

a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, *but does not include* an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

Fielding testified she was an independent contractor. Montgomery acknowledges in her brief that the City did not exercise any authority or control over Fielding or how she performed her job as a water aerobics instructor. Montgomery's argument that Fielding can be considered an agent of the City under section 101.001(2) is, therefore, without merit.

In the alternative, Montgomery argues Fielding's alleged statements are admissible under several exceptions to the hearsay rule. She asserts the alleged statements were a present sense impression, an excited utterance, or statements against interest. *See* TEX. R. EVID. 803(1), (2), (24). A present sense impression is a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." TEX. R. EVID. 803(1). A present sense impression has sufficient indicia of reliability to be admissible because: (1) a report made at the moment of witnessing an event or condition is safe from any error from defect of the declarant's memory; (2) there is little or no time for calculated misstatement; and (3) the statement will usually be made to the witness who reports it who would have equal opportunity to observe and check for a misstatement. *Benson v. Chalk*, 536 S.W.3d 886, 895 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). Here, Fielding's alleged statements about lifeguards throwing soap pods

were made well after the event supposedly occurred and to people who were not there at the time. The statements, therefore, do not qualify as a present sense impression. *See id.*

For the excited utterance exception to apply, the statement must "relate[] to a startling event or condition" and be "made while the declarant was under the stress of excitement that it caused." TEX. R. EVID. 803(2). "A statement that is simply a narrative of past events or acts, as distinguished from a spontaneous utterance, does not qualify as an excited utterance regardless of how soon after the event it is made." *Felix v. Gonzalez*, 87 S.W.3d 574, 578 (Tex. App.—San Antonio 2002, pet. denied). Fielding entered the restroom sometime after Montgomery fell and while Montgomery was already being assisted by others. Fielding testified that, although she was concerned for Montgomery, she did not view the occurrence as startling and was not excited, overcome by emotion, or nervous. The alleged statements pertained to past events, not Montgomery's fall. We conclude the excited utterance exception does not apply.

A statement against interest is a statement that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability or to make the declarant an object of hatred, ridicule, or disgrace." TEX. R. EVID. 803(24). Montgomery

–10–

argues the alleged statements were against Fielding's interest because they pertain to the facilities surrounding the pool in which she teaches water aerobics. But the alleged statements were about an isolated incident in which Fielding was not involved. Fielding had no proprietary interest in the facilities, and was not employed by the City. Therefore, the statements would not affect her interests or subject her to liability. Accordingly, the alleged statements were not statements against interest.

Because Montgomery's and Blessing's testimony regarding statements they claim were made by Fielding is hearsay that does not fit within an exception that would make it admissible, we conclude the trial court abused its discretion in denying the City's motion to strike. We resolve the City's first issue in its favor.

## II. Plea to the Jurisdiction

In its second issue, the City contends the trial court erred in denying its motion for summary judgment in support of its plea to the jurisdiction. *See Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004) (governmental entity must meet summary judgment standard of proof in plea to jurisdiction). Because the existence of subject-matter jurisdiction is a question of law, we review the trial court's ruling de novo. *Suarez v. City of Tex. City*, 465 S.W.3d 623, 632 (Tex. 2015). If the evidence submitted by the parties creates a fact question regarding jurisdiction, the plea must be denied and the fact issue resolved by the fact finder. *Id*. at 633. If the evidence fails to raise a fact issue, however, the plea to the jurisdiction must be granted as a matter of law. *Id*.

Absent a valid statutory or constitutional waiver of immunity, a trial court lacks subject-matter jurisdiction to adjudicate a lawsuit against a municipality. *Id.* at 631. The TTCA waives immunity from suit for claims against a governmental unit for personal injury and death caused by a condition or use of real property if the governmental unit, were it a private person, would be liable to the claimant according to Texas law. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). When the property at issue is open to the public for recreational purposes, and the injury occurs when the plaintiff is engaged in recreation, the recreational use statute limits the governmental unit's duty to the plaintiff to only that which is owed to trespassers. *Id.* §75.002. Thus, when applicable, the recreational use statute requires a plaintiff to show gross negligence, malicious intent, or bad faith. *Id.* § 75.002; *Suarez*, 465 S.W.3d at 632. The term "recreation" is defined to include activities such as swimming, and the statute contemplates not only when the plaintiff is actively engaged in the recreational activity, but also when the plaintiff is on the premises or journeying to and from the recreational area. *Id.* § 75.001(3); *City of Plano v. Homoky*, 294 S.W.3d 809, 816 (Tex. App.—Dallas 2009, no pet.).

Montgomery does not dispute that the recreational use statute applies in this case. She also does not allege the City acted with malicious intent or bad faith. She asserts only that the City's actions rose to the level of gross negligence. As used in the recreational use statute, gross negligence has both an objective and subjective component:

(1) viewed objectively from the standpoint of the actor at the time of its occurrence, the act or omission involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(2) the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

*Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 660 (Tex. 2007). To raise a fact issue on gross negligence, Montgomery was required to present legally sufficient evidence that the City had actual, subjective awareness of a condition in the restroom that involved an extreme risk of serious injury or death, and it was consciously indifferent to the rights, safety, and welfare of others. *Id*. The City must have had actual knowledge that the condition existed *at the time of the accident*. *See Suarez*, 465 S.W.3d at 634. "Although there is no one test for determining actual knowledge that a condition presents an unreasonable risk of harm, courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *Univ. of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008).

Montgomery's lawsuit bases the City's alleged liability on two different, but related premises conditions; the City's choice to change the flooring in the restroom, and the slippery condition of the floor at the time Montgomery fell. Montgomery asserts the City was grossly negligent in removing the safety mats and installing a "slippery water-resistant non-porous epoxy floor" before it "proceeded to invite elderly women to a water aerobics class knowing that they would utilize the

–13–

women's restroom." We first note there is no evidence in the record that the City "invited" anyone to the water aerobics classes conducted by Fielding, or that it was aware of the ages or genders of the participants. More importantly, the City's decision to remove the mats and replace the flooring in the restroom was a discretionary decision about design and safety features for which the City maintains immunity. *See City of Corsicana v. Stewart*, 249 S.W.3d 412, 416 (Tex. 2008) ("The City is immune from liability for discretionary decisions concerning the expenditure of limited resources for the safety of its citizens."); *State v. Miguel*, 2 S.W.3d 249, 251 (Tex. 1999) (decisions about highway design and safety features are discretionary policy decisions for which State retains immunity); *City of Dallas v. Hughes*, 344 S.W.3d 549, 555–56 (Tex. App.—Dallas 2011, no pet.) (City immune from liability for choice of material used to build bridge in recreational park). Montgomery makes no argument that the City's immunity for discretionary decisions was waived in this case.

Although the City retains immunity for its discretionary decisions, it is not immune from liability for negligent implementation of those decisions or the negligent maintenance of its premises. *Hughes*, 344 S.W.3d at 556. Montgomery states she provided evidence that the gritty, non-slip texture was not added to the epoxy on the restroom floor until more than a month after she fell. The evidence upon which Montgomery relies is a check request for "non-slip additive" dated July 3, 2019. When questioned about the check request, Renfroe testified it was for a

reapplication of the same non-slip epoxy that had been applied to the floor before the pool opened in May. This testimony is corroborated by the fact that the restroom passed the health and safety inspection on May 20, 2019, eight days before Montgomery fell.

Montgomery also points to the fact that the epoxy had to be reapplied to show the City failed to properly maintain the floor. Renfroe testified the cleaning procedures they used, including use of a power sprayer, resulted in the epoxy chipping and peeling after the pool had been open "for a little over a month." But she further testified it was her understanding that the floor had not been properly prepared before the epoxy was applied, which caused it to peel. There was no evidence the floor was chipped or peeling at the time Montgomery fell a few days after the pool opened. Nor was there evidence that the chipping and peeling degraded the condition of the floor to a point that it created a serious risk of injury about which the City had actual knowledge.

In addition to the epoxy on the floor, Montgomery contends the City "knew its employees caused the soapy floor" in the women's restroom before the water aerobics class began. The only evidence that City employees caused the women's restroom floor to be soapy is the hearsay testimony about Fielding's alleged statements that we have already determined was inadmissible. Even considering this testimony, however, Montgomery failed to present any evidence that the City had actual knowledge the floor constituted a serious hazard at the time Montgomery fell.

–15–

All the evidence, including Fielding's alleged statements, shows that after the "soap fight" in the restroom, the floor was cleaned to eliminate the mess. Renfroe testified all the lifeguards were trained on proper cleaning procedures which included hosing down the restroom floor and removing the excess liquid with a squeegee. Although Fielding purportedly speculated they "must have missed some of the soap" in the cleaning process, Montgomery testified she did not see any water, soap, or other substances on the floor when she entered. The restroom was open to the public for some time after it was cleaned and before Montgomery fell, including during the earlier water aerobics class, and there were no reports of falls or issues with the restroom floor during that time. In short, there is no evidence that directly or by reasonable inference supports the conclusion the City had actual knowledge there was a dangerous condition on the restroom floor at the time Montgomery fell. *See Suarez*, 465 S.W.3d at 634.

Because Montgomery failed to provide evidence the City had subjective awareness of a condition creating an extreme degree of risk, we conclude the trial court erred in denying its plea to the jurisdiction. *See Univ. of Tex. v. Garner*, 595 S.W.3d 645, 649 (Tex. 2019) (absent gross negligence in suit where recreational use statute applies, governmental entity is immune from suit and trial court lacks subject matter jurisdiction).

We reverse the trial court's order and render judgment dismissing Montgomery's claims for lack of jurisdiction.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

230979F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CITY OF WHITESBORO, TEXAS, Appellant

No. 05-23-00979-CV      V.

DIANA MONTGOMERY, Appellee

On Appeal from the 59th Judicial District Court, Grayson County, Texas

Trial Court Cause No. CV-21-0615. Opinion delivered by Justice Reichek. Justices Carlyle and Miskel participating.

In accordance with this Court's opinion of this date, the order of the trial court denying the CITY OF WHITESBORO'S Motion for No-Evidence and Traditional Summary Judgment in Support of its Plea to the Jurisdiction is **REVERSED** and judgment is **RENDERED** that:

This suit is dismissed for lack of jurisdiction.

It is **ORDERED** that appellant CITY OF WHITESBORO, TEXAS recover its costs of this appeal from appellee DIANA MONTGOMERY.

Judgment entered August 20, 2024