**Opinion issued June 5, 2025**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————————

**NO. 01-23-00200-CV**

———————————————

**WESTON LAKES PROPERTY OWNERS ASSOCIATION, INC., Appellant**

**V.**

**DAVID CASSELL AND SHIRLEY CASSELL, Appellees**

---

**On Appeal from the 268th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 21-DCV-282199**

---

**MEMORANDUM OPINION**

This appeal arises out of a dispute between property owners and a property owners' association concerning which of them is legally obligated to maintain and repair a drainage channel that is partly on the owners' property and is subject to an easement held by the association. The property owners prevailed in the trial court,

where they secured a summary judgment declaring that the property owners' association, alone, is obligated to maintain and repair the area subject to the easement.

The property owners' association appeals, arguing the trial court's declaration is erroneous. The association asserts that the written instruments setting forth the parties' legal obligations, which consist of the subdivision plat and declaration of covenants, conditions, and restrictions, do not legally obligate the association alone to maintain and repair the area of the property subject the drainage easement.

Interpreting the plain terms of the plat and declaration, we agree with the association. We reverse the summary judgment and remand this cause to the trial court for further proceedings consistent with our opinion.

## BACKGROUND

David and Shirley Cassell live in Riverwood Forest at Weston Lakes, a rural subdivision in Fort Bend County governed by the Weston Lakes Property Owners Association. The Cassells own a second, undeveloped and unoccupied lot within the subdivision as an investment property. This second lot is the subject of this suit.

The lot in question is subject to a drainage easement held by the Association concerning a natural channel that is partly located on the lot. This natural channel carries excess water from rainfall out of the subdivision and into the Brazos River.

Over many years, the part of the Cassells' lot subject to the drainage easement has eroded. The Association attributes the erosion to natural causes—namely, heavy rain events and back up of the Brazos River. The Cassells blame the erosion on the Association's inaction, claiming it has not maintained and repaired the channel.

The Cassells sued the Association, seeking a declaration under the governing documents—the subdivision's plat and declaration of covenants, conditions, and restrictions—that the Association alone is obligated to maintain and repair the channel subject to the easement. The Cassells also sought statutory damages under the Texas Property Code for each day the Association failed to fulfill its legal obligations, as well as injunctive relief directing the Association to fulfill them going forward.

The Cassells successfully moved for summary judgment in the trial court.

In its final summary judgment, the trial court declared the subdivision plat makes both the Association and the Cassells responsible for maintaining the part of their lot subject to the drainage easement. It further declared, under the declaration of covenants, conditions, and restrictions, the Association alone is obligated to maintain the part of their lot subject to the drainage easement and that this maintenance obligation includes the prevention and repair of erosion.

The trial court awarded $139,400 in damages and more than $35,000 in attorney's fees to the Cassells. Finally, it ordered the Association to take all

3

reasonable steps to fulfill its maintenance obligations as to the part of the Cassells' lot subject to the drainage easement, including prevention and repair of erosion.

The Association appeals. Among other things, the Association challenges the trial court's declaration that it alone is obligated to maintain and repair the part of the Cassells' lot subject to the drainage easement under the plat and declaration.

## DISCUSSION

The dispositive question on appeal is narrow: Do the subdivision plat and declaration of covenants, conditions, and restrictions unambiguously obligate the Association alone to maintain and repair the natural channel subject to its easement, as the trial court held? The answer is no. Because the entirety of the trial court's summary judgment turns on its erroneous resolution of this threshold issue, we reverse and remand for further proceedings.

### Standard of Review and Applicable Law

Written instruments like the subdivision plat and declaration of covenants, conditions, and restrictions before us are contractual in nature. *E.g.*, *JBrice Holdings v. Wilcrest Walk Townhomes Ass'n*, 644 S.W.3d 179, 183 (Tex. 2022) (restrictive covenants are contracts that run with land). Thus, they are subject to conventional rules of contract interpretation. *See id.* (general rules of contract construction apply).

We review the trial court's interpretation of the plat and declaration de novo. *See id.* (restrictive covenant reviewed de novo). Whether they are ambiguous is a

question of law, which we likewise decide de novo. *E.g.*, *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 280 (Tex. 2018) (whether restrictive covenant is ambiguous is question of law). If they can be given a definite meaning, they are not ambiguous. *See id.* (saying so as to restrictive covenant). If they are susceptible to more than one reasonable interpretation, they are ambiguous. *See id.* (same).

In interpreting these documents, their text is paramount. We interpret them as a whole, giving the words used their ordinary meaning at the time they were written. *See id.* We do not enlarge, stretch, or change the meaning of their words in the guise of interpreting them. *See id.* And we avoid an interpretation that would nullify any of their provisions. *See JBrice*, 644 S.W.3d at 184; *Tarr*, 556 S.W.3d at 280.

**Analysis**

The question is, under the two written documents here (the plat and the declaration), is the Association alone responsible for maintaining the drainage easement? We address each document in turn. We conclude that these documents do not unambiguously make the Association alone responsible.

*The Plat*

First, the plat. The plat states: "[A]ll drainage easements on the foregoing plat will be maintained by the Homeowners Association *and/or* the adjacent lot

owners."[1] (emphasis added).

The trial court interpreted this provision as a matter of law. It declared that the plat unambiguously makes both the Cassells and the Association responsible for maintaining the area of the Cassells' lot subject to the drainage easement.

But that does nothing to answer the question here: does the plat make the Association *alone* responsible? Nothing in the plat helps answer this question. The phrase "and/or" means that either the Association must maintain the drainage easement, the Cassells must do so, or both the Association and the Cassells must do so. But the language does not specify which is the case. Its plain terms certainly do not, in any way, obligate *only* the Association to maintain the easement.

Thus, the plat does not answer the question before us, and it cannot support the summary judgment ruling that the Association was alone responsible.

*The Declaration*

So, we turn to the declaration of covenants, conditions, and restrictions to determine if it resolves the question and states that the Association is alone

---

[1] The copies of the subdivision plat in the record are unreadable. Because the parties agree regarding the plat's language, we accept their joint representation and review the plat accordingly. *See* TEX. R. APP. P. 38.1(g) ("In a civil case, the court will accept as true the facts stated unless another party contradicts them."); *see, e.g.*, *Genender v. USA Store Fixtures*, 451 S.W.3d 916, 923 n.7 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (accepting appellants' undisputed description of partially illegible document).

responsible for maintaining the easement. Applying its plain language, we conclude it does not.

The trial court declared that section 3.23(a) of the declaration unambiguously makes the Association solely responsible for maintenance of the drainage easement as a matter of law. The trial court reasoned that section 3.23(a) affirmatively limits the Cassells' maintenance obligations to those it expressly lists and thus absolves them of any responsibility for maintaining the area of their property subject to the easement. We again disagree.

Section 3.23 concerns "Lot Maintenance" and is part of Article III of the declaration, which pertains to "Use Restrictions." Subsection (a) provides:

> All lots shall be kept at all times in a neat, attractive, healthful and sanitary condition, and the Owner or occupant of all Lots shall keep all weeds and grass thereon cut and shall in no event use any Lot for storage of materials or equipment except for normal residential requirements or incident to construction of improvements thereon as herein permitted, or permit the accumulation of garbage, trash or rubbish. All yard equipment or storage piles shall be kept screened by a service yard or other similar facility as herein otherwise provided, so as to conceal them from view of neighboring Lots, streets or other property.

Section 3.23(a) says nothing at all about maintenance of the easement. It neither addresses the maintenance or repair of drainage easements nor purports to limit the owners' maintenance obligations to those listed in this section.

We interpret the provision as it is written. To read it as limiting homeowners' obligations to those included would broaden its scope beyond what its text states,

7

which we cannot do. *See Tarr*, 556 S.W.3d at 280 (court cannot enlarge, extend, stretch, or change coverage of restrictive covenant through interpretation).

Reading the declaration as a whole confirms this conclusion. The trial court's expansive interpretation of section 3.23(a) would also be inconsistent with other restrictive covenants within the declaration that make it clear an owner's maintenance obligations are not exhaustively catalogued in section 3.23(a). For example, section 3.09(c) states "the Owner shall be responsible for maintaining the drainage ditches or swales appurtenant to said Owner's Lot in their original condition during the term of his ownership." Similarly, section 3.35(b) provides that "grass, shrubbery, and landscaping shall be maintained in a neat and attractive condition." We must read covenants giving every provision meaning. And as these provisions illustrate, section 3.23(a) cannot be read to dictate that the Cassells have no maintenance obligations other than those expressly listed within section 3.23(a).

Moreover, the context in which section 3.23(a) occurs—Article III of the declaration imposing use restrictions on the owners of property within the subdivision—is likewise inconsistent with interpreting it as imposing an unstated maintenance obligation on the Association. Restrictive covenants, like the ones contained in Article III, limit the ways in which an owner may make use of his or her property. *Tarr*, 556 S.W.3d at 279. Not a single provision within Article III imposes an obligation upon the Association. Like any other restrictive covenant,

8

section 3.23(a) limits the Cassells' rights; it does not impose obligations on the Association or allocate responsibilities between the Cassells and the Association.

Section 3.23(a) does not resolve the plat's inherent ambiguity as to who is obligated to maintain and repair the Cassells' property subject to the drainage easement. Nor does any provision of the declaration of covenants, conditions, and restrictions. The declaration is silent on this matter, and we cannot assign legal obligations based on silence. *See Tarr*, 556 S.W.3d at 285 (when covenant is silent, court cannot interpret it as imposing limitation or restriction on property rights).

### *The Cassells' arguments to the contrary*

The Cassells try to avoid this result by reference to a variety of other provisions within the declaration. But none of these provisions is material here.

For example, the Cassells argue that section 3.09(a) precludes them from interfering with drainage patterns and thus bars them from maintaining or repairing the area of their lot subject to the drainage easement. But what section 3.09(a) states is that an owner "will not in any way interfere with the established drainage pattern over his Lot from adjoining or other Lots in the Subdivision." It is not self-evident that maintenance or repair of the area subject to the easement would interfere with the established drainage pattern. In any event, section 3.09(a) also contemplates that an owner may need to change the established drainage under certain circumstances, and it authorizes changes of this sort subject to the approval of the Association's

architectural control committee. A provision authorizing an owner to make certain changes with approval does not unambiguously state that the Association alone is responsible. It suggests the opposite.

The Cassells also argue the drainage easement is a "common area" the Association must "maintain and repair" under section 8.03 of the declaration. But "common area" has a particular meaning. Section 1.05 defines "common area" as "real property (including the improvements thereto) within the Subdivision owned by . . . the Association for the common use and enjoyment of the Owners." The Association does not own the land at issue, the Cassells do. The Association's easement does not make it an owner. *See Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 658 (Tex. 2007) (easement is nonpossessory interest for particular purpose or purposes and does not convey title to property). Hence, the part of their lot that is subject to the Association's drainage easement is not a "common area."

Finally, the Cassells point to section 8.01 of the declaration, which gives the Association "the power to do anything that may be necessary or desirable to further the common interests" of the members of the property owners' association. They also assert that section 6.08 provides that the Association "may levy and assess a special assessment" to repair "the failure of the drainage facilities" within the subdivision. But having the power or authority to do something is not the same thing as having a legal duty or obligation to do so. *See, e.g.*, *Tex. Health & Human Servs.*

*Comm'n v. Pope*, 674 S.W.3d 273, 287 (Tex. 2023) (statute empowering inspector general "to conduct investigations and enforce laws" does not obligate inspector general to do so "in a particular manner or in any particular set of circumstances"). And "may" conveys discretionary authority, not mandatory duties or obligations. *See, e.g.*, *Pedernal Energy v. Bruington Eng'g*, 536 S.W.3d 487, 492 (Tex. 2017) (observing in context of statutes that "may" creates discretionary authority or grants permission or power).

In the end, the declaration of covenants, conditions, and restrictions is silent as to who has the obligation to maintain and repair the part of the Cassells' property that is subject to the Association's drainage easement. Silence, of course, cannot resolve the question left open in the subdivision plat on this subject. *See Tarr*, 556 S.W.3d at 285 (when covenant is silent, court cannot interpret it as imposing limitation or restriction on property rights). And silence does not entitle the Cassells to summary judgment.

Because the entirety of the trial court's summary judgment turns on its erroneous threshold determination that the declaration unambiguously obligates the Association to maintain and repair the part of the Cassells' property subject to its drainage easement, we need not consider the remaining issues briefed by the parties. *See* TEX. R. APP. P. 47.1 (requiring us to issue opinion that is as brief as practicable but that addresses all issues raised and necessary to final disposition of appeal).

## CONCLUSION

We reverse the trial court's judgment and remand this cause for further proceedings consistent with our opinion.


                                       Jennifer Caughey
                                       Justice

Panel consists of Justices Guerra, Caughey, and Morgan.